# STEPHEN B. HAYES, CONSERVATOR, vs. CHARLES W. CANDEE.

Third Judicial District, New Haven, June Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The defendant had in his household a widow, S, nearly sixty years old, weak-minded and far below the average in intellect, and B, a farm hand, sixteen years of age. S had an imbecile child living in another State, whom the selectmen of the defendant's town had been asked to support. They refused, on the ground that S had property—an undivided one-sixth interest, valued at $500, in a farm—which should be first applied. The defendant told S that the town intended to take this property to use for her child's support, that it would be better for her to give it to B and have no property, and that she would lose nothing by so doing. This was known by the defendant to be untrue, and was said with intent to induce S to give a deed. Shortly thereafter she deeded her property to B for $5, which was paid by the defendant. The defendant was soon appointed guardian for B, sold the property for $446, and expended for B all but $10. S was not related to B, and conveyed her land because she was led by the defendant to believe it was necessary to do so in order to protect her interest, and that it would be without loss to her. *Held* that upon these subordinate facts the trial court was justified in finding, as ultimate conclusions, that S was weak-minded, that in consequence she was more readily influenced to part with her property, that the defendant and B fraudulently intended to obtain her property, and that she did not intend to make a gift.

This court cannot say, as a matter of law, that the trial court errs in refusing to credit the testimony of certain witnesses.

An allegation in a complaint that one is "mentally weak and incompetent" is practically sustained by a finding that he was "weak-minded and far below the average in intellect."

In an inquiry in which the mental condition of a person is the subject of investigation, a non-expert witness may be asked if such person "was capable of transacting business."

The question whether such a person "was capable of making a deed of land," may be regarded as calling either for an opinion as to his legal capacity to make a deed, or merely for one as to his general mental capacity. From the former point of view it is objectionable; but if, under the circumstances of the case, the question can fairly be regarded as calling only for the latter opinion, it is admissible.

Argued June 3d—decided July 18th, 1902.

ACTION to recover damages for fraud and imposition prac-
ticed upon the plaintiff's ward whereby she was induced to
convey her real estate without consideration, brought to the
Court of Common Pleas in Fairfield County and tried to the
court, *Curtis, J.;* facts found and judgment rendered for
the plaintiff for $500 damages, and appeal by the defendant
for alleged errors in the rulings and findings of the court.
*No error.*

The case is sufficiently stated in the opinion.

*Louis K. Gould* and *Robert H. Gould,* for the appellant (de-
fendant).

*Frank M. Canfield,* for the appellee (plaintiff).

TORRANCE, C. J. The plaintiff, as the conservator of Mary
B. Spencer, brings this suit against the defendant, individu-
ally, and as guardian of a minor. The complaint alleges in
substance the following facts : In August, 1898, Mary B.
Spencer, a woman mentally weak and incompetent, was the
owner in fee of an undivided one-sixth interest in certain
land in the town of Easton in this State ; the defendant
represented to her that the selectmen of Easton intended to
take that interest and use it for the support of her minor son,
and requested her to give a deed of the property to Hilmer
Bodine, a minor in the employment of the defendant; said
representation was false to the defendant's knowledge, and
was made with intent to induce her to convey said interest to
Bodine. "Believing said representation to be true, and in-
duced by said representation, and by reason of her said weak-
ness and incompetency of mind, said Mary B. Spencer, on
the 19th of August, 1898, gave a deed of the property afore-
said to said Hilmer Bodine," without consideration.

The complaint further alleged that after this the plaintiff
was appointed and qualified as conservator of Mrs. Spencer ;
that the defendant was appointed and qualified as guardian
of said minor, Bodine, and as such in March, 1900, sold said
property and gave a deed thereof for the consideration of
of $466.66.

The answer admitted that Mrs. Spencer owned the land as alleged, that the plaintiff was conservator as alleged, that the defendant was guardian as alleged, and as such had sold and conveyed the land as alleged. The other allegations of the complaint were denied. The court found the issues for the plaintiff, and rendered judgment in his favor against the defendant, individually, for $500 damages.

The appeal record in this case seems to have been prepared, for the most part, as the basis of a futile attempt, on the part of the appellant, to retry here questions of fact conclusively settled in the trial court; and hence it contains a great deal of matter not only useless and unnecessary, but harmful, in that it tends to obscure the real questions in the case. The case before the trial court was a simple one, and the material facts necessary to a proper decision of it were few; yet the request for a finding contains eighty-six paragraphs. There are sixty paragraphs of exceptions to the finding; the reasons of appeal are stated in seventy-four paragraphs; and, added to this, all the evidence in the case is certified up. It will not be necessary, however, to consider the reasons of appeal separately. They may for convenience of discussion be divided into six groups, alleging respectively, in substance, that the court erred as follows : (1) in finding certain facts upon insufficient evidence ; (2) in finding certain facts without evidence ; (3) in refusing to find certain facts upon sufficient evidence; (4) in finding certain facts from subordinate facts which do not support the finding; (5) in rendering judgment upon the facts found ; (6) in rulings upon evidence.

The first three of these groups, comprising the greater part of the seventy-four reasons of appeal, deal with the claimed errors of the court in making up its finding and in refusing to correct the same ; and with respect to these groups it is perhaps enough to say that the allegations of error contained in them are not borne out by the record. It does not appear that the trial court found any fact without evidence, nor that it found the facts on which the judgment rests upon insufficient evidence, nor that it erred in refusing to find certain facts

which the defendant says it ought to have found; indeed, as to this last matter, the trial court expressly says that although many of the facts which it refused to find were testified to in substance by the defendant or Bodine, or both, the court did not give credit to their statements; and this court cannot say that the trial court erred in failing to credit such statements. The result is that the finding as made must stand.

In the 4th and 5th groups of the reasons of appeal, the defendant claims that the trial court erred in drawing certain of its ultimate conclusions from the facts found, and in rendering judgment upon facts which do not support the judgment; and whether these claims are well founded or not must be determined by a consideration of the facts found.

The material facts found are in substance these: In August, 1898, Mrs. Spencer was and had been for sometime living in Easton in the family of the defendant, a farmer there, with whom there also lived as "help" a sixteen-year old lad named Bodine. Mrs. Spencer was fifty-seven years old, "weakminded and far below the average in intellect," although she could read, write and cipher some, make simple purchases, and perform ordinary housework. She was a widow with two children under age, one of whom, a boy named David, was an imbecile then living with his uncle in New Hampshire. She had no property except an undivided one-sixth interest in her deceased father's farm, which interest was then worth about $500. Prior to August 19th, 1898, the selectmen of Easton had been asked to take care of the imbecile son, but had refused to do so on the ground that his mother had property which should be first applied to his support. They had also considered the question of appointing an overseer over her, but did nothing about it. The town never did support said son. A short time before August 19th, 1898, the defendant told Mrs. Spencer that the town intended to take her property from her to use for David's support, and that it would be better for her to give a deed of it to Bodine and have no property, and that she would lose nothing by so doing. This was not true, and the defendant knew it was not true, and it was made to in-

duce her to give such a deed. She, being weakminded, believed what he said, and relying upon the truth of it was induced on the 19th of August, 1898, to convey her interest in the farm to Bodine, for the sole consideration of $5, paid to her by the check of the defendant which was made payable to Bodine and indorsed by Bodine to her. In September, 1898, the defendant was appointed guardian of Bodine, and testified in the trial below that he, as such guardian, subsequently sold said property for $446, and had expended all the proceeds for said Bodine except $10, and had not yet been paid for his services as guardian. Bodine was in no way related to Mrs. Spencer, and she conveyed the land to him because she was led by the defendant to believe that it was necessary to do so in order to protect her interests, and that it was for her benefit to do so, and that it would be without loss to her. She had sufficient intelligence to comprehend that the deed conveyed her interest in her father's estate to Bodine, and that the title thereto had passed to him, but she did not intend to make a gift of it to him, and was led by the defendant to believe and did believe that the transfer was made to benefit her. The deed to Bodine was prepared at the direction of Mrs. Spencer by the town clerk of Easton at the time it was executed.

No direct evidence was given that the defendant profited by the giving of said deed, or that he consulted with or had any understanding with Bodine regarding the matter of said conveyance, or that the defendant profited or expected to profit by the same; but the court finds, as an inference from all the circumstances of the transaction as laid before the court on the trial, "that there was throughout a fraudulent purpose on the part of both Candee and Bodine to secure said property for their own benefit." Among the facts thus found will be noticed these four: (1) that the woman was weakminded; (2) that in consequence of this she was more readily influenced by the defendant to part with her property; (3) that the defendant and the boy fraudulently intended to obtain her property; (4) that she did not intend, in what she did, to make a gift to the boy.

The defendant claims, in the 4th group of reasons of appeal, that these facts are really conclusions drawn from the evidence and other facts found, and that they are not warranted by such evidence and facts; he says that, taking the evidence and the other facts found, including those marked "proven" in defendant's proposed finding, it clearly appears that the above conclusions are without support.

In this view we are unable to concur. On the contrary, the evidence and the other facts found, including those marked "proven," seem to fully justify the trial court in reaching the conclusions in question; at any rate we cannot upon this record say that the trial court erred in drawing them.

In the 5th group of reasons of appeal, the defendant claims in substance that the facts found do not support the judgment rendered, "because the complaint in this action, and upon which said judgment is rendered, sets up the mental incompetency of Mary B. Spencer as a substantial fact, and such incompetency is not found by the court."

The complaint alleges that Mrs. Spencer was "mentally weak and incompetent"; while the finding is that she was "weakminded and far below the average in intellect." The words "mentally incompetent" have no strict technical meaning; they do not necessarily mean that the person to whom they are applied is an idiot, or *non compos mentis*; they merely indicate a relative, and not an absolute, lack of mental ability. We think the allegation and finding upon this point are practically, and for the purposes of this case, equivalent in meaning. Furthermore, even if the complaint had alleged utter mental incapacity on the part of the woman, and the court had found only mental weakness, such finding would support the judgment in this case, upon the other facts found.

The last group of reasons of appeal relates to rulings upon evidence. Certain witnesses were called by the plaintiff to testify as non-experts to the mental condition of Mrs. Spencer. They testified in the usual way to the facts upon which their opinions were based, and then without objection expressed their opinion as to her general mental condition. The plain-

tiff then asked some of these witnesses, in substance, the following questions: (1) whether Mrs. Spencer was capable of transacting business; (2) whether she was capable of making a deed of real estate. They answered in the negative. The defendant objected to this evidence, on the ground that the opinions of witnesses as to the capacity of Mrs. Spencer to do business, or to make a deed, were inadmissible.

As to the first of these questions we think it was a proper one. No objection was taken to it on account of its generality, and the answer to it involved no matter of law in any proper sense, and was but a mode of ascertaining the opinion of the witness as to the degree of mental weakness. A witness competent to give his opinion as to the mental capacity of a party, may give his opinion as to the degree of it. *United States* v. *Guiteau,* 1 Mackey, 498 (47 Am. Rep. 247); *Horah* v. *Knox,* 87 N. Car. 483; *Turner's Appeal,* 72 Conn. 305, 316. In the last-named case the language of the court upon this point is as follows: " For the purpose of showing the extent of mental impairment it is not unusual nor improper to ask a duly-qualified witness whether in his opinion the testator possessed sufficient understanding to be able to transact the ordinary business matters incident to the management of his household affairs and property. *Kiethley* v. *Stafford,* 126 Ill. 507, 520. The mental power required to attend to such ordinary affairs may be regarded as so much a matter of common knowledge and experience as to be a fair standard of comparison readily understood by both witness and jury, by which to illustrate the degree of intelligence of one whose mental condition is the subject of investigation. It has been held to be proper to permit a witness to compare the mental power of the testator to that of 'an average child of seven or eight years.' *Richmond's Appeal,* 59 Conn. 226, 242. A witness may of course always testify to the fact, when such fact is within his personal knowledge, that the testator's mental state was such that he was or was not able to transact business, or to do any other particular act which would indicate the condition of his mind."

With respect to the admissibility of the answer to the sec-

ond question, the decisions and rulings are conflicting.   Upon
the question of sanity or insanity, or the degree of general
mental capacity, in most of our courts the opinions of qualified
witnesses, expert and non-expert, will be received in evi-
dence ; while upon the question of the existence of sufficient
mental capacity to do certain legal acts, such as making a
contract, a deed, or a will, the opinions of witnesses, however
well qualified, in many, perhaps in most, of our courts, will
not be received in evidence.   The opinion of the witness in
the first class of cases is said to be an inference of fact which
is or may be helpful to the jury or other trier; while in the
second class of cases the opinion is said to be, or to involve,
an inference or conclusion of law, to be drawn by the court,
or by the jury under the instructions of the court, and not
by a mere witness.   It is said that the distinction is between
an opinion as to the mental condition of a party as a mere
matter of fact, and an opinion as to his legal capacity to do
certain legal acts, which last is said to involve matter of law.
This distinction, with the reasons on which it rests, and the
arguments in favor of a somewhat rigid observance of it in
practice, are well stated in *Brown* v. *Mitchell*, 88 Tex. 350,
36 L. R. A. 64; and the note to that case contains refer-
ences to most of the cases upon the subject.   As might be
expected, the rulings of the courts upon such a subject are
not harmonious ; and the attempt to draw a hard and fast line
in a matter of this kind has not been entirely successful.   An
opinion as to the mental capacity of a party to make a deed
or a will or a contract is quite frequently simply the wit-
nesses' way of stating the mental condition of the party ;
and when this is really the case, it would seem as if on prin-
ciple the opinion should be admitted.   In *Shanley's Appeal*,
62 Conn. 325, this court held that a non-expert witness, in a
will contest, might be asked and permitted to answer whether
the testator was of sound and disposing mind.   In one sense
his answer was an opinion as to the legal capacity or incapacity
of the testator to make a will, but really and in another sense
it was only one way of stating the witness' opinion as to the
mental condition of the party.   In the case at bar the ques-

Hayes, Conservator, *v.* Candee.

tion, "Was Mrs. Spencer capable of making a deed of land," may be fairly regarded as calling either for an opinion as to her legal capacity to make a deed, or merely for one as to her general mental condition, and the degree of her mental weakness. In the former point of view it would be objectionable and inadmissible under the decision of this court in *Turner's Appeal*, 72 Conn. 305, 315, where it was held, in effect, that the opinion of a witness upon a question of this nature was inadmissible; while in the latter point of view it would be clearly admissible. We are inclined to think that the question under consideration should be regarded, under the circumstances of this case, as calling only for an opinion as to her general mental condition and the degree of her mental weakness, and therefore admissible.

But if it cannot fairly be so regarded, then we think that the failure of the court to exclude the question and the answers to it, did not harm the defendant, and furnish no ground for a new trial. Whether Mrs. Spencer's deed to Bodine was void for her want of mental capacity, and whether she could or could not make a deed, were not issues in the case. The court has not found that she could not make a deed, nor that she could not transact business; on the other hand it has in effect found directly contrary to the evidence objected to, that she had capacity to make a deed and transact business. This being so, it is difficult to see how the defendant suffered any harm from the evidence in question.

Three other rulings upon evidence, of which the defendant complains, were clearly right, but they are not important enough to justify further statement or discussion.

There is no error.

In this opinion the other judges concurred.