IN RE WILL OF CLAUS JAHN.

HENRY N. JAHN, Appellant, v. EMELIE JAHN MACMURTRY, Appellee.

**EVIDENCE:** Opinion Evidence—Expert Usurping Function of Jury.
1    An expert must not be permitted to usurp the functions of the jury. So held where an expert was permitted to say, in effect, that deceased was mentally incapable of executing a will.

**APPEAL AND ERROR:** Review—Presumptions—Improper Evidence—High Qualifications of Witness. The *eminent* qualifications of an expert to give proper opinions may persuasively lead the mind to conclude that an improperly expressed opinion by him was presumptively prejudicial with the jury.
.2

**TRIAL:** Reception of Evidence—Sua Sponte Exclusion by Court.
3    Inherently incompetent and immaterial evidence is properly stricken on motion, even though the mover assigns no reason therefor.

**TRIAL:** Reception of Evidence—Rejection of Non-Responsive Answers. He who asks a question and receives a non-responsive,
4

but relevant, competent, and material answer, has the clear right to retain such answer in the record. (The court suggests that one denied this right may hardly predicate error thereon, inasmuch as he may secure the matters of which he has been deprived by simply asking another question.)

*Appeal from Crawford District Court.*—M. E. HUTCHISON, Judge.

JANUARY 12, 1918.

REHEARING DENIED SEPTEMBER 30, 1918.

OBJECTIONS to the admission of the will of Claus Jahn were interposed by his daughter, and on trial it was set aside, because of a finding of his alleged want of capacity to execute said will. The proponents appeal.—*Reversed.*

*W. S. Moore* and *Sims & Kuehnle,* for appellant.

*Conner & Powers,* for appellee.

LADD, J.—I. Claus Jahn died testate, March 18, 1915, when about 84 years of age, leaving him surviving two sons, Henry N., the proponent, and William N. Jahn, and Amelia Jahn MacMurtry, contestant. The will tendered for admission to probate, after directing payment of all debts, including the expense of last sickness and burial, bequeathed $500 to the contestant, devised his residence in Manilla to his son, Henry, and left the residue of the estate to Henry and William. Objections thereto were interposed by the daughter, asserting (1) that the will was not executed according to law; (2) that the decedent was of unsound mind and incapable of making a will; and (3) that the execution of the will was procured by the undue influence of the sons. It was conceded that the will was duly executed, if the decedent was possessed of sufficient capacity so to do. The court withdrew the issue of undue influence from the consideration of the jury. The only issue submitted was as to whether decedent was possessed of capacity to make a will.

Among the witnesses called was Dr. Gershom H. Hill, who qualified as an expert, and testified, in response to a hypothetical question, that the decedent was of unsound mind, and explained somewhat at length the reasons leading him to this conclusion. After being examined at length on cross-examination, he was re-examined by the contestant, and, among other inquiries, was asked:

1. **Evidence: opinion evidence: expert usurping function of jury.**

"In your opinion, was this man in such condition that he lacked ability to comprehend and understand transactions involving the disposition of property by will or otherwise?" An objection was made that the witness and testimony sought to be elicited were incompetent, and the question proper for the jury alone, and not for the witness. This objection was overruled, and the witness answered: "I believe that he lacked that ability."

Manifestly, the interrogatory put up to the expert the precise issue which the jury later was required to pass upon. If decedent lacked the ability "to comprehend and understand transactions involving the disposition of property by will," as the witness declared, then the jury must have found for the contestant. There is no escape from this conclusion. Such an inquiry was held to be objectionable on this ground—that is, as calling for an opinion on the ultimate issue to be determined by the jury—in *Pelamourges v. Clark*, 9 Iowa 1, where the court said that "a witness cannot be permitted to give his opinion in answer to an inquiry which embraces the whole merits of the case, and leaves nothing for the jury to decide." Since then, this doctrine has been adhered to in numerous decisions, among which may be cited: *In re Betts' Estate*, 113 Iowa 111; *Marshall v. Hanby*, 115 Iowa 318; *State v. McGruder*, 125 Iowa 741; *Glass v. Glass*, 127 Iowa 646; *Barry v. Walker*, 152 Iowa 154, 157; *Erwin v. Fillenwarth*, 160 Iowa 210.

These decisions would seem enough to settle the rule, at least for this state. The degree of mental impairment or unsoundness is a fact to be ascertained from witnesses (*State v. McGruder*, supra); the extent of such impairment or unsoundness essential to deprive the person under investigation of the capacity to do a particular thing, as to make a will, or to execute a deed, or other instrument, is a question of law, and the determination of whether a person had the capacity to execute a will or other instrument, when he signed, is a mixed question of law and the facts proven. However much physicians may know concerning the symptoms of mental impairment, they are not to be regarded as experts in the law as well, nor to be permitted to apply the law to the facts, as must happen when undertaking to pronounce on the precise issue to be determined by the trier (whether court or jury). Perhaps the clearest statement of the distinction to be observed is that of Judge Christiancy, in *Kempsey v. McGinniss,* 21 Mich. 123, 141:

"To what extent and in what manner the mind of the testator was affected by the disease, or what was his mental condition, was a question of fact, upon which it was competent for the professional witnesses to express their opinions. But what degree of mental capacity is necessary to enable a testator to make a valid will, to what extent and with what degree of perfection he must understand the will and the persons and property affected by it, or to what extent his mind must be impaired to render him incapable, is a question of law, exclusively for the court, and with which the witnesses have nothing to do. And it is a question of law of no little difficulty, which calls for the highest skill of competent jurists, and upon which the ablest courts are not entirely agreed. * * * Such opinions must be rendered utterly useless, and become a source of error and confusion, if the professional witness is allowed to fix his

own legal standard of testamentary capacity, thus mixing up in the minds of the jury his conclusions upon matters of law, of which he is ignorant, with his conclusions from facts pertaining to his profession, which he claims to understand; while his professional brother, testifying on the other side, equally competent, comes to directly opposite conclusions from the same facts.  Besides, if each witness is allowed to fix his own legal standard of testamentary capacity, no two of them will be likely to fix upon the same; and there may be an apparent agreement while they differ in fact, and an apparent conflict when there is a real coincidence in opinion; and the jury have no means of knowing the real meaning of the witnesses, or judging of the value of their testimony. It may be urged in reply to this that the confusion arising from allowing witnesses to answer questions involving their opinion of the legal capacity to make a will may be cleared up by a cross-examination, ascertaining what, in his opinion, constituted such capacity, and that any error in this respect may be corrected by the court in his charge, or otherwise.  But it seems to me much wiser, wherever it is practicable, to exclude the improper question, and avoid the confusion altogether, than to admit it first, and then undertake to get rid of its effects, an experiment which is never wholly successful."

Like distinction is pointed out with the same conclusion in many cases, among them being *Walker v. Walker's Exr.*, 34 Ala. 469; *Farrell's Admr. v. Brennan's Admx.*, 32 Mo. 328 (82 Am. Dec. 137); *Clapp v. Fullerton,* 34 N. Y. 190 (90 Am. Dec. 681); *Hall v. Perry,* 87 Me. 569 (33 Atl. 160, 47 Am. St. 352); *May v. Bradlee,* 127 Mass. 414.  In *Hayes v. Candee,* 75 Conn. 131 (52 Atl. 826), the court points out that the question may be so framed as that it may be construed as merely calling for an opinion of fact, and *Brown v. Mitchell,* 88 Tex. 350 (36 L. R. A. 64), often cited as holding that direct inquiries as to capacity to exe-

cute the particular instrument may be propounded, does not so rule. Here, the doctor was called upon to pass upon decedent's ability to dispose of his property by will or otherwise, and apparently experienced no difficulty in combining the functions of witness, court, and jury in answering that "I believe he lacked that ability." Often, a ruling, in

**2. Appeal and error: review: presumptions: improper evidence: high qualifications of witness.**

receiving such an answer, might not prove to be of any considerable prejudice. We are not persuaded that such is the necessary conclusion in this case. Dr. Hill had been a student of mental diseases since 1874, assistant superintendent of one of the state asylums for the insane, 7 years, and superintendent thereof, 21 years, and thereafter had devoted his exclusive attention to the treatment of diseases of the nervous system and mind, and has had under his charge continuously a sanitarium for nervous invalids. Quite naturally, a jury would give no little consideration to the opinion of a person of such learning and extensive experience as to how the case should be decided. Had the trial judge expressed the same opinion, reversal would have been inevitable; and it cannot be said that this physician's opinion in such case might not have been equally prejudicial.

II.   One Brown, in explaining the incident that brought to mind a matter to which he testified, said:

"Q. What was the incident to fix it on your mind? A. Well, I don't know as there was anything particular; only he was coming from the post office, going towards his

**3. Trial: reception of evidence: sua sponte exclusion by court.**

home, and I was going from work towards home, and I thought it was a pretty slippery time for an old gentleman to be out on the sidewalk. It was very slippery and wet."

Contestant's counsel moved that what the witness thought be stricken, without stating any ground for the

motion. It was sustained. Appellant argues that this was error, for that no reason was stated. Had the motion been overruled, error could not be predicated thereon, owing to omission to state the ground of the motion. Fairness of counsel to the court exacts this rule. But it does not follow that the trial court may not, *sua sponte*, exclude improper evidence. This is for the reason that a litigant is not entitled to have improper evidence considered by court or jury, and, therefore, no right is impinged by the exclusion of evidence which should have been excluded on sufficient and timely objection. There was no error.

III. Saunders, who was called by proponent, after saying on cross-examination that he had noticed nothing out of the ordinary in decedent as he went by, was asked:

**4. Trial: reception of evidence: rejection of nonresponsive answers.** "You were not thinking of 'Sometime it will be important for me to notice Claus Jahn as he goes by'? A. Well, no, I never gave that a thought, you know; although I have been particularly attracted to old Mr. Jahn, because he is an old neighbor and a friend of our family."

The objection that the answer was not responsive was not available to other than the party examining the witness. The answer was not objectionable otherwise, and the ruling was erroneous. *Christensen v. Thompson*, 123 Iowa 717; *State v. Rutledge*, 135 Iowa 581; *State v. Nathoo*, 152 Iowa 665; *In re Will of Dunahugh*, 130 Iowa 692; *Zenor v. Smith*, 150 Iowa 424; *Horan v. Chicago, St. P., M. & O. R. Co.*, 89 Iowa 328. If the evidence is proper, even though not responsive to the question propounded, the party examining the witness has the right to have it retained, if he desires so to do, and remain a part of the record. Rarely, if ever, can rulings in striking evidence as nonresponsive prove prejudicial, because it is only necessary to ask another question, in order to avoid such consequence; and an

attorney would hardly be excusable in not thus curing the error, rather than standing thereon.

Our conclusion renders a review of the evidence unnecessary, and other matters complained of are not likely to happen on another trial.' Owing to the error in overruling the objection to the question propounded to Dr. Hill, the judgment is—*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.