PAUL TWICHELL *v.* NANCY L. GUITE ET AL.
(AC 18019)

Spear, Landau and Healey, Js.

---

[21] See footnote 20.

Argued December 15, 1998—officially released April 27, 1999

*Thomas Behrendt*, with whom, on the brief, was *Edward Mattison*, for the appellant (named defendant).

*Dennis J. O'Brien*, for the appellee (plaintiff).

*Opinion*

HEALEY, J. The defendant Nancy L. Guite appeals from the trial court's judgment denying her July 11, 1997 motion to open a judgment of strict foreclosure of a judgment lien rendered on February 19, 1997. In her motion to open, she alleged that she was defaulted for her failure to appear and sought to open the judgment because the trial court allegedly lacked subject matter jurisdiction. She contended that such jurisdiction was lacking because an indispensable party was not joined as a defendant. In addition, she alleged that she was made a defendant "when the plaintiff knew she was mentally incompetent to defend herself." The

trial court, in its thorough memorandum of decision on her motion to open, denied the motion.[1]

Prior to setting out the issues and our analysis, it will be helpful to relate some of the factual background of this case, which covers a period of more than twenty years. The defendant Nancy L. Guite and the plaintiff Paul Twichell are mother and son. Late on Christmas Eve in 1975, the plaintiff was apparently playing his stereo very loudly in the house in which he and his mother lived in Coventry, which is the subject property of the strict foreclosure involved in this case. Guite requested that he turn down his stereo, but he did not. She then took a twelve gauge shotgun and pointed it at Twichell. In an ensuing struggle, the shotgun went off and he was shot in the arm. On November 18, 1977, Twichell brought an action in two counts[2] against his

---

[1] In its memorandum of decision on the defendant Nancy L. Guite's motion to open, the trial court referred to a motion filed by the plaintiff to open the February 19, 1997 foreclosure judgment for the purpose of citing in Charles B. Guite, Jr., a son of the defendant Nancy L. Guite. There is no dispute that he is the indispensable party to whom Nancy L. Guite's motion to open refers.

In its memorandum of decision, the trial court discussed not only Nancy L. Guite's request to open the February, 1997 decree of strict foreclosure of the judgment lien but also the opening of a 1979 judgment against her in a tort action, which we discuss later, that formed the basis of the judgment lien involved. The last sentence of the trial court's memorandum of decision states: "The court denies the motion to open the foreclosure judgment or the 1979 judgment, which resulted in the judgment lien forming the basis for the foreclosure judgment."

[2] The first count was against Nancy Guite and it alleged that she committed a battery on her son in that she "discharged a loaded shotgun on [him]." The second count was directed against the plaintiff's father, Charles B. Guite, Sr., who was alleged to be the owner of the shotgun. That count also alleged that, for a long time prior to the Christmas Eve shooting, his father "was aware of the emotional and mental instability of . . . Nancy L. Guite, and yet he allowed her to use said shotgun." The second count, thereafter, alleges that "Charles B. Guite was negligent in permitting or allowing . . . Nancy L. Guite, to use said shotgun to harm the plaintiff." The defendant Nancy L. Guite points to the "emotional and mental instability" language in the second count as a judicial admission of her mental incompetency.

mother and father, Charles B. Guite, Sr., seeking money damages for injuries arising out of the 1975 shooting.

On November 15, 1977, a Superior Court judge granted a prejudgment remedy against Nancy L. Guite and Charles B. Guite, Sr., attaching the Coventry real estate in the amount of $70,000. This attachment was filed in the Coventry land records on November 18, 1977. On December 15, 1977, the defendant Nancy L. Guite was defaulted in the tort action for failure to appear. On April 6, 1978, less than five months after the tort action was instituted, the defendant Nancy L. Guite transferred her interest in the property by quit-claim deed[3] to the defendant Paula M. Peters, then known as Paula M. Twichell, who was her daughter.[4] Thereafter, the trial court held a hearing in damages in the underlying tort action. In its December 21, 1979 written memorandum of decision,[5] the court awarded the plaintiff the sum of $45,000 plus costs. The defendant Nancy L. Guite was neither present nor did she participate in that hearing through counsel. On January 4, 1980,[6] a certificate of judgment lien was filed in the Coventry land records.

[3] The record reveals that on August 7, 1986, Charles B. Guite, Sr., transferred his interest in the Coventry real estate by quitclaim deed to the defendants Paula M. Peters (his daughter) and Michael T. Peters, and that deed was recorded in the Coventry land records on May 7, 1986.

[4] Thereafter, Paula Twichell transferred her interest by quitclaim deed to herself and her then husband, Michael T. Peters. Subsequent to the commencement of the present foreclosure action in 1996, Paula M. Peters and Michael Peters transferred the property to Charles Guite, Jr., whom the trial court assumed was the son of Charles B. Guite, Sr., and Nancy Guite. This latter transfer was unknown to the plaintiff.

[5] The December 21, 1979 memorandum of decision stated: "The plaintiff testified as to his injury and the court observed the horribly disfigured right arm of the plaintiff. After observing how the plaintiff is unable to use the arm, the court concludes that it is totally disabled." Medical special damages were found to be $20,247.51.

[6] The judgment secured by the judgment lien was wholly unsatisfied at that time and remains so. The February 19, 1997 judgment of strict foreclosure of this lien found the debt owing thereunder now to be $119,258.38.

Nothing was done to foreclose the 1980 judgment lien until the institution of this foreclosure action in January, 1996. On August 14, 1996, the defendant Nancy L. Guite and the other defendants were defaulted for failure to appear in that action. On February 19, 1997, a judgment of strict foreclosure of the plaintiff's 1980 judgment lien was rendered.[7] All of the then defendants, including Nancy L. Guite, were given law days, but none of those defendants redeemed. On July 11, 1997, an attorney[8] representing the defendant Nancy L. Guite filed a motion to open the foreclosure judgment of February 19, 1997, which generated this appeal.

On appeal, the defendant Nancy L. Guite claims that the trial court improperly (1) determined that she was mentally competent to defend this foreclosure action and the underlying tort action, (2) failed to grant her a hearing on her July, 1997 motion to open the 1997 foreclosure judgment, thus violating her right to due process under the fourteenth amendment to the United States constitution and (3) failed to open the foreclosure judgment, which was obtained by default, as untimely.

The defendant Nancy L. Guite claims first that her mental incompetency permeates not only the strict foreclosure itself, but also the events that took place during the 1970s. She claims that her mental incompetency requires an evidentiary hearing as to the 1997 foreclosure judgment obtained by default, as well as the underlying 1979 tort judgment also obtained by default, "notwithstanding the plaintiff's judicial admission of her incompetency."

---

[7] The foreclosure judgment found the debt to be $119,258.38. The real estate was appraised at $40,000, which the court found to be the fair market value of the property.

[8] There is no indication in the record when that attorney filed his appearance but the defendant Nancy Guite was represented by counsel, at least since that motion was filed.

We begin our discussion of the defendant Nancy L. Guite's claimed mental incompetency[9] by referring, as she does, to the plaintiff's 1977 complaint in the tort action, which she claims contains a judicial admission by the plaintiff of her incompetency. Actually, that complaint contains two counts with the first count directed to the defendant Nancy L. Guite and the second count to her late husband, Charles B. Guite, Sr. The first count contains no allegation of the defendant Nancy Guite's incompetency. The second count, however, does allege that Charles B. Guite, Sr., "for a long time prior [to the 1975 shooting] was aware of the emotional and mental instability of . . . Nancy L. Guite."

In considering the matter of mental incompetency, it must be acknowledged that "[m]ental impairments admit of a wide variety of conditions of varying degrees of severity, depending upon the particular case." 53 Am. Jur. 2d 460, Mentally Impaired Persons § 1 (1996). Our Supreme Court, in construing a complaint in an action challenging the validity of the grantor to convey certain of her real estate, has had occasion to parse the allegation that the grantor was "mentally weak and incompetent." (Internal quotation marks omitted.) *Hayes, Conservator* v. *Candee*, 75 Conn. 131, 136, 52 A. 826 (1902). The *Hayes* court said that "[t]he words 'mentally incompetent' have no strict technical meaning; they do not necessarily mean that the person to whom they are applied is an idiot, or non compos mentis; they merely indicate a relative, and not an absolute, lack of mental ability." Id. Thus, "[a]n individual may be competent for one purpose but not for another . . . ." (Citation omitted.) *Adoption of Kirk*, 35 Mass. App. 533, 537, 623 N.E.2d 492 (1993), rev. denied, 416 Mass. 1110, 629 N.E.2d 1004 (1994). Even today, statutory definitions

[9] There is no evidence that a conservator was ever appointed by the court for the defendant Nancy Guite up to and including the time of the taking of the appeal to this court on January 20, 1998, from the trial court's decision of December 5, 1997.

are not in complete uniformity but depend on particular cases. See, e.g., General Statutes §§ 17a-458 (chapter 319 defining persons with psychiatric disabilities); 17a-495 (defining mentally ill person); 54-56d (defining competent for purposes of starting trial). Recently, in a termination case, our Supreme Court said, "By definition, a mentally incompetent person is one who is unable to understand the nature of the termination proceeding and unable to assist in the presentation of his or her case. See General Statutes § 54-56d (a); *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960)." *In re Alexander V.*, 223 Conn. 557, 563, 613 A.2d 780 (1992). Nor should we overlook the presumption that a person is competent and capable of defending a case brought against him. See *Kirwan* v. *State*, 168 Conn. 498, 503, 363 A.2d 56 (1975).

As to the claimed judicial admission by the plaintiff in the 1977 complaint, we conclude that that allegation does not, under the circumstances of this case, constitute a determination that she was mentally incompetent so as not to be capable of understanding and defending this litigation. We note, on the matter of the defendant Nancy L. Guite's awareness, that the clerk of the trial court wrote a letter to her, dated November 29, 1977, referring to an earlier letter sent by the defendant Nancy L. Guite to the clerk. The clerk's November 29, 1977 letter suggested that Guite consult an attorney. Moreover, there is a suggestion that the plaintiff himself was not totally candid with the court on the matter of the defendant Nancy L. Guite's mental state at the time the default for failure to appear was rendered in 1977. We cannot accept any such view because the allegation concerning her emotional and mental instability was plainly in the complaint. The position that a guardian ad litem should have been appointed for her, under General Statutes § 45a-132, cannot be accepted. Such an appointment is only discretionary, and no claim is

made that plaintiff's counsel ever requested it. Furthermore, under the circumstances, we see no valid reason for that court to have sua sponte appointed a guardian ad litem in 1977. The events that took place only a few months later demonstrate clearly not only the competency of the defendant Nancy L. Guite during this period but also the lack of necessity for the appointment of a guardian ad litem.

The events we refer to occurred early in 1978, not long *after* the defendant Nancy L. Guite was defaulted for failure to appear in the tort action and not long *after* a prejudgment remedy was awarded as to the real estate involved in the underlying tort action. It is a fair assumption that the defendant Nancy L. Guite or someone on her behalf heeded the clerk's November 29, 1977 letter to consult an attorney.[10] As the trial court pointed out, the file of attorney Mark Shapera, who instituted the 1977 tort action on the plaintiff's behalf, contained notes on a telephone call from attorney Joel Rottner on January 8, 1978, that Shapera would "give Rottner three weeks, February 1, call him before claiming it" as well as a letter dated March 19, 1978, to Rottner stating that "I am notifying you that I have reclaimed my motion for default against Mr. & Mrs. Guite." The trial court also had before it a letter, dated March 19, 1978, to Shapera from the defendant Nancy L. Guite, informing him that "we were at the courthouse on the appointed day." The trial court's decision significantly states that "the [March 19, 1978] letter does not purport to claim any defense to the tortious conduct, *but rather refers to and acknowledges her understanding of the prospect that 'it is quite possible we could lose the family property.'* " (Emphasis added.)

Shortly thereafter, on April 6, 1978, the defendant Nancy L. Guite signed and acknowledged a quitclaim

[10] This letter was attached to the plaintiff's brief in opposition to the defendant's July 11, 1997 motion to open the judgment of strict foreclosure.

deed transferring her interest in the Coventry real estate to her daughter.[11] This was done less than five months after the plaintiff instituted the tort action. She claims, however, that she lacked the mental competency to convey her interest effectively.

Our Supreme Court has said that "[t]he test of [a grantor's] mental capacity to make the deeds . . . was whether at the time of executing them he possessed 'understanding sufficient to comprehend the nature, extent and consequence' of them. 1 Swift Dig. 173; *Hale* v. *Hills*, 8 Conn. 39, 44 [1830]." *Nichols* v. *Nichols*, 79 Conn. 644, 657, 66 A. 161 (1907). The occasion on which a person deeds away her interest in her lifelong home is a serious one, which, in this instance, was witnessed and acknowledged in a quitclaim deed. "An acknowledgement is the formal declaration, before an authorized official, by the person who executed an instrument, that it is his free act and deed." *Commercial Credit Corp.* v. *Carlson*, 114 Conn. 514, 517, 159 A. 352 (1932). Moreover, the execution of the deed took place before witnesses. The trial court was not persuaded that this defendant lacked the mental capacity to transfer her property freely. The trial court also determined that the defendant's execution of the deed, under the circumstances existing at the time, was not "a mere coincidence, unrelated to the commencement of the [tort] suit." We agree.

The trial court could have reasonably concluded, as it did, that the defendant Nancy L. Guite did understand

[11] At oral argument, the defendant's counsel suggested that the defendant Nancy L. Guite's children prevailed upon her and that they were playing "hot potato" with the 1978 deed "as they continued to do." When asked for the evidence of this, he said: "I must acknowledge there's nothing in the record to this effect." The defendant's brief states, however, that "[she] is not asserting fraud on the part of the plaintiff." Moreover, the trial court found that the plaintiff "did nothing to conceal the defendant's mental instability" from either the judge who issued the prejudgment remedy or the judge who held the 1979 hearing in damages, which awarded $40,000 damages to the plaintiff.

the advisability of obtaining counsel, the nature of the tort claim, the prospect of an adverse judgment and its consequences concerning her interest in the property. In addition, it is a fair inference that in 1977 and 1978, she appreciated the fact that she was sued because of the 1975 Christmas Eve incident. The defendant Nancy L. Guite's conduct was hardly that of a person who was not aware and who did not know what she was doing.

Having now concluded from the record that the defendant Nancy L. Guite was mentally competent at the relevant stages of this litigation, including when she executed the quitclaim deed on April 6, 1978, we must determine the effect of the execution of the deed on this appeal. It raises the question of whether this appeal has been rendered moot because the defendant, the sole appellant, deeded away her interest in the real estate that is the subject matter of this action on April 6, 1978, when she was mentally capable of doing so. We conclude that her appeal is rendered moot.[12]

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. See 5 Am. Jur. 2d, Appellate Review § 642 (1995)." *Connecticut Natural Gas Corp.* v. *Dept. of Consumer Protection*, 43 Conn. App. 196, 203, 682 A.2d 547, cert. denied, 239 Conn. 938, 684 A.2d 707 (1996).

"Since mootness implicates subject matter jurisdiction; *Sadlowski* v. *Manchester*, 206 Conn. 579, 583, 538

---

[12] Prior to oral argument on this appeal, counsel were alerted to be prepared to address whether this appeal was moot insofar as it challenges the trial court's denial of the motion to open the judgment of strict foreclosure and they were referred to General Statutes § 49-15 and *Barclays Bank of New York* v. *Ivler*, 20 Conn. App. 163, 165, 565 A.2d 252, cert. denied, 213 Conn. 809, 568 A.2d 792 (1989). The matter was addressed by counsel during oral argument, as was the impact on this appeal of the defendant's 1978 quitclaim deed transferring her interest in the property.

A.2d 1052 (1988); it can be raised at any stage of the proceedings. See *Sobocinski* v. *Freedom of Information Commission*, 213 Conn. 126, 134–35, 566 A.2d 703 (1989). We have consistently held that we do not render advisory opinions. If there is no longer an actual controversy in which we can afford practical relief to the parties, we must dismiss the appeal. *Sadlowski* v. *Manchester*, [supra, 583]. . . . *Board of Education* v. *New Haven*, 221 Conn. 214, 216, 602 A.2d 1018 (1992). Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires . . . that there be an actual controversy between or among the parties to the dispute: Courts exist for determination of actual and existing controversies, and under the law of this state the courts may not be used as a vehicle to obtain judicial opinions on points of law. . . . [W]here the question presented is purely academic, we must refuse to entertain the appeal. . . . *Hallas* v. *Windsor*, 212 Conn. 338, 347, 562 A.2d 499 (1989). A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 439 n.3, 685 A.2d 670 (1996)." (Internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 6–7, 688 A.2d 314 (1997). An issue is moot when the court can no longer grant any practical relief. See *Ivimey* v. *Watertown*, 30 Conn. App. 742, 754, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993); *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 571, 499 A.2d 1158 (1985); see also *Reynolds* v. *Vroom*, 130 Conn. 512, 515, 36 A.2d 22 (1944); *In re Catrina L.*, 47 Conn. App. 64, 67, 701 A.2d 1058 (1997). In a word, "[j]urisdiction over an appeal requires the existence of an actual and existing controversy." *Groesbeck* v. *Sotire*, 1 Conn. App. 66, 68, 467 A.2d 1245 (1983). "Mootness deprives this

court of subject matter jurisdiction. *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995); *First Trust National Assn.* v. *Hitt*, 36 Conn. App. 171, 174, 649 A.2d 798 (1994)." *In re Corey E.*, 40 Conn. App. 366, 369, 671 A.2d 396 (1996).

There can be no question that the defendant Nancy L. Guite executed the quitclaim deed of April 6, 1978. Such a deed is "an ordinary and primary instrument of conveyance and conveys to the grantee whatever interest the grantor has in the property." *Hoyt* v. *Ketcham*, 54 Conn. 60, 62, 5 A. 606 (1886). She has had no record interest in the subject property since that deed was recorded on May 14, 1978.[13] The 1978 quitclaim deed not only extinguished her record interest but also rendered inappropriate her joinder in this action as a party defendant. "Anyone having a present interest in the property in question is a necessary party to this action because he or she holds a known interest in the land which would be affected by the relief sought. *McShan* v. *Sherrill*, 283 F.2d 462, 463–64 (9th Cir. 1960)." *Graham* v. *Zimmerman*, 181 Conn. 367, 372, 435 A.2d 996 (1980). The defendant has no present interest in the property in question. There is no actual existing controversy in this appeal between the plaintiff and the defendant. There is no practical relief that can be afforded to the defendant Nancy L. Guite in this appeal. Her voluntary act in 1978 deeding away her interest in the real estate has extinguished her standing as a party to this litigation, including this appeal. In addition, her conduct, at a time when the trial court concluded that she understood the nature of the tort claim against her, the prospect of a judgment and its consequences and the advisability of obtaining counsel, casts serious doubts on her motive in executing the 1978 deed.

---

[13] There is no claim, nor does the record disclose that there was any conveyance to her since that date re-creating any record interest in this property in the defendant Nancy L. Guite.

In any event, the present appeal is moot because of a lack of subject matter jurisdiction. "Although this issue was not raised by the parties, the court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear." *Sasso* v. *Aleshin,* 197 Conn. 87, 89, 495 A.2d 1066 (1985). Because our resolution of that issue is dispositive of the appeal, we do not consider the merits of the remainder of the defendant's claims.

The appeal is dismissed.

In this opinion the other judges concurred.