Mary Ann McCue *vs.* Thomas McCue et als.

Third Judicial District, New Haven, January Term, 1924.
Wheeler, C. J., Beach, Curtis, Webb and Kellogg, Js.

It is a general rule that no one is allowed to impeach the character of his own witnesses, but if they testify against him he is not necessarily bound by their adverse testimony, but may disprove it by other witnesses, and it is then for the jury to decide which evidence is most credible under all the circumstances.

The complaint, in the present case, alleged that the defendants entered

McCue *v.* McCue.

into a conspiracy to secure and did secure from the plaintiff by undue influence the transfer of her property, consisting of real estate, stock and a bank account, at a time when she lacked mental capacity to make the transfer. *Held:*—

1. That the presiding judge properly instructed the jury that the element of conspiracy, although entirely distinct from and unrelated to the question of mental capacity, was an essential allegation of the complaint and must be proved by the plaintiff by a fair preponderance of the evidence.

2. That the present inability of the plaintiff to recall the making of the transfers had no bearing upon the issue of mental capacity if, at the time they were made, she possessed sufficient mental capacity and was not subjected to undue influence.

3. That it was harmless error for the court to charge the jury that in passing on the issue of undue influence in obtaining the deed of real estate, they must take into consideration the fact that the plaintiff had retained the life use and that the defendants could receive no benefit from it during her lifetime; for, while technically incorrect, as ignoring the sale value of the defendants' reversionary interest during the plaintiff's lifetime, it was sufficiently accurate as applied to the issue involved.

4. That the court did not err as a matter of law in instructing the jury that they might find the issues for the plaintiff as to the transfer of the stock and for the defendants as to the transfer of the real estate, since the plaintiff might have had the capacity to understand the nature and effect of a deed of real estate and, at the same time, have been unable to comprehend the more complicated and unusual transaction of an assignment of stock coupled with a deed of trust.

5. That the court properly excluded a carbon copy of a will made by the plaintiff, no evidence of the loss or destruction of the original having been offered; and that the plaintiff should have asked for and obtained a ruling upon the admissibility of the copy, before she could contend that she was refused the benefit of its contents.

Argued January 22d—decided March 1st, 1924.

ACTION for a reconveyance of real estate, for cancellation of a deed of trust of personal property, and for an accounting for moneys withdrawn from a savings bank under a power of attorney, on the ground that the same were executed by the plaintiff at a time when she was incapable of understanding their nature and effect, and were induced by the undue influence of the defendants or some of them, brought to the Superior

Court in Fairfield County and tried to the jury before *Jennings, J.;* verdict and judgment for the defendants as to the conveyance of real estate, and for the plaintiff as to the personal property and savings-bank deposits, from which the plaintiff appealed. *No error.*

The plaintiff is a widow described in the complaint as seventy-six years old. She has three children: Thomas, who was married and lived in Stamford with his wife and three children, all of whom are named as defendants; Mary Ann Giblin, a married daughter, also named as defendant; and Catherine, who at the time of the transactions complained of and for many years before had lived with one George Tyler as his wife, though not married to him until after this action was brought. The plaintiff had lived with her daughter Catherine and George Tyler for about fifteen years, when, as the complaint alleges, Thomas McCue and Mary Ann Giblin called at the house and persuaded the plaintiff to accompany them in an automobile to the home of Thomas; and while there, being in a weak and enfeebled condition, she was by persuasion and undue influence induced to remain away from her daughter Catherine's home, and to remain with Thomas McCue at his home and with his family and under their undue influence until the transactions complained of had taken place.

For all the purposes of this appeal the transactions in question were three: (1) the signing by the plaintiff of the power of attorney authorizing Joseph to draw against the plaintiff's deposits in the Citizens Savings Bank; (2) the signing by the plaintiff of her name to a blank form of power of attorney on the back of a certificate for thirty shares of the preferred stock of the American Sugar Refining Company, and the execution of a deed of trust to Joseph, purporting to assign the stock to him upon trust to collect the dividends and pay them to the plaintiff during her life, and after her

death to sell the stock and divide its proceeds equally among the children of Mary Ann Giblin and Thomas McCue; (3) the execution and delivery of a warranty deed of certain real estate by the plaintiff to the defendants Thomas McCue and Mary Ann Giblin, reserving to the grantor the use and income thereof during her lifetime. The deed of trust and the deed of real estate were acknowledged before a notary on December 14th, 1920, and the power of attorney to draw from the savings bank was signed on December 10th, 1920.

The complaint alleges that the plaintiff has no recollection of signing or executing any of these papers, and that if she did so she was at that time mentally incapable of understanding their nature and effect, and was induced to sign them by the undue influence of the defendants. It was claimed by the plaintiff on the trial that early in January, 1921, she left her son Thomas' house and immediately started to try to recover her property. This action was brought April 21st, 1921. The defendants deny all the allegations of the complaint relating to mental incapacity and undue influence.

The following special interrogatories were submitted to and answered by the jury:—

1. Was the plaintiff, at the time when she endorsed the certificate of stock, Exhibit A–19, and the declaration of trust accompanying it, Exhibit E, possessed of mind enough to understand and comprehend the nature and effect of her acts and of the making of the assignment and declaration of trust in evidence before you? Answer: No.

2. Was the plaintiff, on December 14th, 1920, possessed of mind enough to understand and comprehend the nature and effect of her act in making the conveyance of the Chapel Street property in evidence before you? Answer: Yes.

3. Did the defendants, or any of them, secure from

the plaintiff the assignment of the shares of stock and declaration of trust which are in evidence, by the exercise of such coercion or importunity as overcame the plaintiff's free agency? Answer: Yes.

4. Did the defendants, or any of them, secure from the plaintiff the conveyance of the Chapel Street property by the exercise of such coercion or importunity as overcame the plaintiff's free agency? Answer: No.

*Russell Porter Clark,* for the appellant (plaintiff).

*Warren F. Cressy,* for the appellees (defendants).

BEACH, J. We take up the assignments of error, so far as they are pursued on the brief, in their order.

Assignment No. 3. In charging the jury that an instrument may properly be signed on one day and acknowledged before a notary public at a later date, the court dwelt somewhat on the fact that the personal appearance before the notary was the important thing in the acknowledgment, and concluded with these words: "that is the important thing, and not whether the paper was actually signed in his presence. If he acknowledges the signature, that is all right." This was said with reference to the power of attorney on the back of the stock certificate, which was signed December 13th, and acknowledged December 14th in connection with the accompanying deed of trust. No complaint is made as to its effect on that paper because the jury found in plaintiff's favor as regards that transaction. But the claim is made that the jury might have inferred that the deed of real estate was valid, if the plaintiff merely acknowledged her signature, without acknowledging the instrument to be her free act and deed. We think this criticism is far-fetched, especially as plaintiff's claims made on the trial admit that all the

papers in question were "executed by the plaintiff . . . before said Gordon and two witnesses, not members of the family." Mr. Gordon was the notary.

Assignment No. 5. The court charged that "by calling the defendants to the stand and making them her own witnesses, the plaintiff in a general sense vouched for their good character. Where their statements were made fairly and the facts to which they testified are not otherwise controverted or contradicted, they must be considered as binding upon her. . . . For instance, if you find that these defendants, called by the plaintiff, testify uniformly that no conspiracy existed and that no improper means were used by them to influence Mrs. McCue to make the various gifts in question, and no other evidence is offered showing the facts to be otherwise, then the plaintiff is bound by their testimony and you must find that no such conspiracy existed. Of course the same limitation there: 'and no other evidence is offered.' You have a right to consider all the evidence, not only the evidence of these defendants but other evidence introduced by the plaintiff, and to believe that which you find to be most credible under all the circumstances."

This charge was entirely proper. The general rule was correctly stated: "No man is allowed to impeach the . . . character of his own witnesses; but if they . . . testify against him, he may disprove their testimony by other witnesses." 1 Swift's Digest, p. 767. See also *Barlow Bros. Co.* v. *Parsons*, 73 Conn. 696, 706, 49 Atl. 205. The application of the rule was carefully limited, and the jury were charged "to believe that which you find to be most credible under all the circumstances."

Assignment No. 6. The court charged in part: "In this connection I wish to say a word about the element of conspiracy in this case. This does not enter into the

question of the mental capacity of the plaintiff, the first question you will have to consider. It is, however, an essential allegation of the complaint with respect to the charge of undue influence in securing both the transfer of the Chapel Street property, the sugar stock, and the withdrawal of the funds from the savings bank. It must be proved by the plaintiff by a fair preponderance of the evidence. In other words, the evidence must do more than raise a suspicion in your minds that a conspiracy existed; it must lead to an actual belief on your part that these defendants, or some of them, were joined together in a common purpose to defraud."

The first two sentences above quoted seem to be self-evident. As the court said elsewhere in the charge: "It is not necessary, of course, to find a conspiracy, to find that she lacked mental capacity; the two have not any real relation. If she did not have mental capacity she could not transfer property, and that is all there is to that." The rest of the above quotation does not, of course, say anything more than that, upon the allegations of this complaint, the plaintiff must prove by a fair preponderance of the evidence "that these defendants, or some of them, were joined together in a common purpose to defraud." It is apparent that the narrative already outlined justifies the trial court in this construction of the complaint.

Assignment No. 7. The only comment upon the legal effect on this part of the charge disregards the hypothesis on which it was based, namely: "If at the time these gifts were made she possessed sufficient mind to comprehend the nature of her act, and was not fraudulently induced to make them or unduly influenced." Upon that hypothesis it necessarily follows, as the court said, that "the fact that she does not now remember having made these gifts has no bearing upon the sub-

ject, nor would it entitle her to a judgment revoking the gifts." The objection to the remainder of the excerpt contained in this assignment, that it is "incoherant, misleading and harmful," asserts no proposition of law. There is some lack of connection evident, but under our rule the court was well within its rights in calling the attention of the jury to the plaintiff's "evident fear" that George Tyler would in some way get possession of her property, and her "evident desire" to make some disposition of her property during her lifetime. On the assumption that the plaintiff had sufficient mental capacity to understand the nature and effect of her acts, these were manifestly some of the operative motives for the transactions in question. Whether they were implanted in the plaintiff's mind by fraud, or undue influence, was another and a different question discussed in another part of the charge.

Assignment No. 8. The jury were charged that if the plaintiff fully comprehended the nature and effect of the deed of real estate, and intended thereby to pass the title to Thomas and Mary, reserving to herself the life use and income, then the burden of proof was on the plaintiff to show that her act was induced by fraud or undue influence, and that "you must find such acts as induce upon your part a belief that an active conspiracy existed, and that it was because of this conspiracy and as a result of it that the plaintiff was induced to sign and deliver the deed." As already stated, the facts alleged in the complaint necessarily involve a charge of conspiracy by the defendants or some of them to defraud the plaintiff.

Assignment No. 9. The court charged that in passing on the issue of undue influence in obtaining the deed of real estate, the jury must take into consideration the fact that she retained for herself during her

lifetime the use and income of the property, "and that the grantees can receive no benefit from it during her lifetime." This last phrase is complained of as incorrect and misleading. In one sense it is true, and in another sense it is not, for the remainder interest acquired by the grantees was a vested interest which they might sell for a valuable consideration during the lifetime of the grantor. On the other hand, their interest was postponed in enjoyment, and in that sense it was quite proper to say that the grantees could receive no benefit from the deed during the grantor's lifetime. For the purposes of this case the only material question as to the accuracy of this part of the charge relates to its bearing on the issue of undue influence. Judged by that standard the error was technical, unimportant and harmless. The important thing called to the attention of the jury was that the plaintiff was not asked to part with the life use and income of the property, but only to make a conveyance of the remainder interest, to take effect in enjoyment at her death, and that this conveyance was made to two of her children who were the natural objects of her bounty. For the purpose of assisting the jury in determining whether or not under all the complicated circumstances of this case, the conveyance was more probably than otherwise induced by fraud and undue influence, it was sufficiently accurate to say that the grantees could not receive any benefit from it during the grantor's lifetime.

The 12th assignment of error seems to be based upon a mere verbal criticism of the portion of the charge complained of. We find no question of law discussed under this assignment on the brief.

Assignment No. 13. The charge here complained of is as follows: "Among the other acts charged by the plaintiff as having been induced by the defendants

are those relating to the application for the commitment of Catherine McCue and the appointment of a conservator over her. Upon this point the plaintiff has offered the testimony of physicians tending to show that Catherine was at the time of sound mind. In this connection, however, you will remember that the point at issue is not whether Catherine was in fact insane, but whether or not her mother, under the circumstances as they then existed, believed her to be so, and this you must decide upon the evidence of all the witnesses and the situation and status of Catherine at the time."

The allegation of Catherine's sanity was only one element to be considered in determining the real issue raised by the pleadings in respect of this transaction; to wit: whether the application to commit Catherine to an institution for the insane was induced by undue influence. The court correctly charged that the jury must decide this issue upon the evidence of all the witnesses, "and the situation and status of Catherine at the time." It is therefore a mistake to suppose, as the appellant does, that the court excluded the alleged fact of her sanity from consideration by the jury.

Assignment No. 15 relates to the fact that the jury asked for instructions on the question whether it was consistent "to separate Interrogation 1 from Interrogation 2 so as to permit of an answer 'yes' as to one and 'no' to the other." The court answered: "Yes," and this is assigned as error. Evidently it is not error as matter of law. The plaintiff might have sufficient mental capacity to understand the nature and effect of a deed of real estate, and at the same time be unable to comprehend the more complicated and unusual transaction of an assignment of stock coupled with a deed of trust. Besides, it appears from the finding and

charge that there was testimony to the effect that the plaintiff expressed her satisfaction with the provisions of the deed of real estate at or about the time that she was objecting to the deed of trust.

Assignment No. 18 is based on the exclusion by the trial court of a carbon copy of a will drawn by Mr. Moore for the plaintiff on January 31st, 1921. Mr. Moore testified to a recollection that an original had been executed and given to the plaintiff. Thereupon the court declined to admit the paper until the original was shown to be lost or destroyed, and suggested that the plaintiff should be called and asked about it, saying that she might possibly say that she did not know anything about this paper, or might deny that she ever executed it (she having already denied any recollection of the other documents executed about six weeks before), and in that event it ought not to come in at all as evidence of her state of mind at the date of the document, for which purpose the contents of the documents were claimed to be admissible. After considerable discussion the court adhered to its ruling, saying: "It is not an exhibit at this time, I think it may be relevant later." To this ruling plaintiff excepted. We think upon all the facts plaintiff was bound to conform to the suggestion of the court or to offer some evidence as to the loss or destruction of the original, and to ask for and obtain a ruling directly on the point of the admissibility of the copy, before having a right to say that the trial court refused to give her the benefit of its contents.

There is no error.

In this opinion the other judges concurred.