JOHN J. SULLIVAN, ADMINISTRATOR, *vs.* WILLIAM J. CLEAR.

Third Judicial District, Bridgeport, October Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and BANKS, JS.

There is no occasion for this court to pass upon alleged errors of the trial court in charging the jury upon the subject of the plaintiff's damages, where the verdict was for the defendant.

A person may be competent to make a deed of real estate though lacking in capacity to make an involved contract or to transact business generally; therefore, an instruction to that effect, coupled with a careful and correct presentation of the law of mental capacity, is unobjectionable.

The plaintiff complained of the trial court's instruction that if the conveyance by the plaintiff's intestate to the defendant was the result of undue influence or mental incapacity, the measure of the plaintiff's damage would be the fair value of the property less any consideration given in good faith by the defendant for the conveyance. *Held* that, aside from the immateriality of this question in view of the verdict for the defendant, the plaintiff had no just cause to complain.

The close and confidential relationship existing between an aunt and nephew residing in the same household furnishes, in itself, no basis for an inference or presumption that a deed from the aunt to the nephew was obtained by fraud or undue influence.

The trial court excluded a photograph offered by the plaintiff to show the house occupied by two indigent sisters of the grantor, who inherited nothing from her estate as a result of the conveyance to the defendant. *Held* that its relevancy was so remote that its exclusion was within the discretion of the trial court.

The trial court admitted evidence that the conveyance to the defendant was upon his oral agreement to care for the grantor during the balance of her life, against the plaintiff's objection that the agreement was within the statute of frauds. *Held* that the trial court did not err, since the existence and extent of the consideration for the deed had an important bearing upon the issues of mental capacity and undue influence.

Argued October 31st—decided December 12th, 1924.

ACTION to recover the value of certain real estate, a conveyance of which was alleged to have been pro-

cured from the plaintiff's intestate by the defendant through fraud and undue influence, brought to the Superior Court in New Haven County and tried to the jury before *Kellogg, J.;* verdict and judgment for the defendant, and appeal by the plaintiff. *No error.*

The complaint alleges the prior ownership of the property in question by the intestate, Julia Norris, the making of the deed in question, the conveyance of the land therein described by the intestate to defendant, and that the deed was obtained by the persuasion, solicitations and false representations of the defendant and without consideration, although defendant knew that the intestate had two elderly sisters who were in need of a distributive share in the intestate's estate upon her death; that at the time of the conveyance, Julia Norris was old and feeble in mind and understanding, susceptible to influence and did not comprehend the nature of the conveyance she was making, and that defendant took advantage of her mental incapacity, and by undue influence procured the conveyance to him; that the intestate died March 15th, 1923, leaving the two sisters aforesaid and other relatives, who would inherit her estate, and that plaintiff was her legally qualified administrator. Defendant's answer denied all of the allegations of the complaint except the original ownership of the property conveyed to him.

At the trial plaintiff offered evidence to prove that Julia Norris was about eighty-two years old at the time of the conveyance in question, unmarried, in feeble health, with a weak, vacillating and unsound mind, and in a condition unfit to comprehend the nature of the conveyance made by her; that she had spent most of her life as a domestic servant, and about fourteen years before her death, on account of increasing age and feebleness, had given up all work except her own

household cares; that she had invested all her savings in the property in question, which, when conveyed, was unincumbered, and of a value of about $8,000, and rentable for from $50 to $65 a month; that she lived in the upper (third) story of the house and rented the remainder; that while defendant occupied the premises he had collected the rent therefrom; that on June 24th, 1920, the deed in question was executed at her house, after it had been prepared by an attorney who had received instructions from defendant without any instructions from her; that nothing was then or thereafter paid by defendant to her for the premises, and such deed was procured by undue influence and improper persuasion of the defendant; that the latter was about thirty-five years of age, capable of earning good wages, in comfortable circumstances, and in no need of financial assistance; that with his wife he came to live upon the premises and was in daily contact with the intestate; that at different times she had said that defendant had compelled her to make the conveyance to him, and had taken her property from her; that at the time of the conveyance the deceased had two sisters, older than herself, who lived in Fair Haven, and whom she frequently visited and with whom she was on entirely friendly terms; that both were old and decrepit; that deceased had frequently declared both before and after making the conveyance, that her place was to be kept as a homestead for these sisters, one a widow, the other unmarried; that at the death of the intestate, all the estate left by her was the sum of $122 in a savings-bank.

Defendant offered evidence to prove that he was the son of another sister of the deceased, born in the year 1883, whose father died in 1888; that after the death of the latter, the intestate made her home with him and his mother, when she was not employed else-

where; that strong affection existed between him and his aunt, the deceased, with whom defendant and his mother continued to live up to his marriage in 1905; that a few years thereafter defendant's mother and the deceased went to housekeeping together on the third floor of the premises in question; that defendant lived elsewhere; that the deceased frequently requested him to move into the second floor of her house; that he frequently visited his mother and aunt, and that a strong friendship existed on the part of his aunt toward his mother and himself.

The defendant also offered evidence to prove that for about five years before June, 1920, the intestate had frequently requested the defendant to move into her premises on the second floor, desiring that he be near his mother and herself, and she frequently, during this period of time, expressed a desire to transfer and convey the premises to the defendant; that a short time prior to June 1st, 1920, she again requested the defendant to move into her house, stating that his mother was not in very good health and that she, Julia Norris, desired the defendant to move into the premises so that he would be in a position to look after her, Julia Norris, in the event that anything should happen to the defendant's mother; that she and the defendant's mother were then living on the third floor of said premises; that about one week before June 24th, 1920, she requested the defendant to secure a lawyer and have a deed prepared by which she would give the premises in question to the defendant, reserving to herself a life use; that the defendant, in compliance with this request, had a deed drafted by an attorney, who called at the home of the defendant, on the second floor of the premises, as the defendant had moved therein on June 1st, 1920, at the request of Julia Norris, and that the attorney read to her the deed and ex-

plained to her its terms; that she explained to the attorney that the conveyance was being made to the defendant in consideration of his agreement to care for her, pay her debts at the time of her death, look after and pay for her burial, and have masses said for the repose of her soul; that Julia Norris, at the time of executing the deed, was of sound mind, capable of understanding the nature and effect of the conveyance, and made the same without the defendant exercising any undue influence over her; and that there was a good and sufficient consideration for the conveyance; and that the deed was executed in the consummation of an intention long existing and often expressed; that at the time the deed was executed the intestate had six nieces and nephews living in Ireland, children of a deceased brother and sister, and that she was on friendly terms with these nieces and nephews; that at the time of the execution of the deed the defendant and his mother were the favorite relatives of Julia Norris; that the mother of the defendant died in October, 1920, and immediately thereafter Julia Norris, in compliance with her agreement with the defendant, came to live with him, and he gave her a room to herself and furnished her with meals from October, 1920, to March, 1923, when she died; that during this time the defendant charged her nothing for board and lodging; that this board and lodging was furnished by him in compliance with his agreement with her at the time of the execution of the deed; that at all times while the defendant lived on the premises he paid rent of $18 per month to Julia Norris; that all rents paid by other tenants were paid to her, and if these rents came into the hands of defendant they were immediately turned over to Julia Norris; that after the death of Julia Norris the defendant attended to her burial from his own apartments, paid for her burial, paid for masses,

and paid all of her remaining debts; that Julia Norris, during the years that the defendant knew her, was physically and mentally well and had no serious sickness, and did not, during any of this period of time, have the services of a doctor until four months before her death; that the conveyance to the defendant was at the suggestion of Julia Norris and was her own voluntary act, and that she, in entering into her agreement with the defendant for her care, was providing for her own welfare.

During the trial the plaintiff offered in evidence certain photographs of the house occupied by the above mentioned sisters of the intestate at the time of the conveyance, for the purpose of showing the condition of these two sisters at the time of the conveyance, and the manner in which they lived. This testimony the court excluded and the plaintiff excepted.

Upon the trial the defendant offered in evidence an oral agreement claimed to have been made by him with the intestate, that if she would convey the property to him, he would support her for the remainder of her life. To this evidence plaintiff objected as obnoxious to the statute of frauds. The evidence was admitted, and plaintiff excepted.

Upon the trial plaintiff made divers requests for instructions to the jury, some of which were not given in the form requested, and the refusal so to do is made a ground of error, as well as certain portions of the charge as given. These claimed errors are considered in the opinion.

The issue of fraud in the procuring of the conveyance was not pressed at the trial.

*Charles S. Hamilton,* for the appellant (plaintiff).

*David M. Reilly,* for the appellee (defendant).

KEELER, J.  The first request to charge the jury was a proper one, to the effect that if the deceased was found to have been mentally incapable to execute the deed, or under the undue influence of defendant, in either case, plaintiff should recover, and that the recovery should be the value of the premises conveyed with interest.  The court complied with the request as regards mental capacity and undue influence, but upon the amount of recovery charged as follows: "If either of these propositions is established by a fair preponderance of the evidence, the plaintiff is entitled to recover the fair value of his interest in the property at the date of her death, less any amount that you find from the evidence that the defendant, in good faith, is entitled to for his services or his expenditures, or that for which he has obligated himself as a consideration for this conveyance.  And to this amount so found you should add interest at the rate of six per cent to the date of your verdict.  And as to the question of the amount to be deducted, I fail to recall that any stated amount was given you in evidence upon any one of those different items which I have just stated to you."

The plaintiff claims that the matter just quoted is an incorrect statement of the law and in its connection confusing.  It was not incorrect as matter of law, since any allowance to defendant is made to depend upon the finding of the jury as to the good faith of the defendant in the transaction.  *Beckwith* v. *Cowles*, 85 Conn. 567, 570, 83 Atl. 1113.  In view of the fact that the jury found for the defendant, the correctness of the court's charge on the question of damages is not before us.  That it confused the jury, as claimed by plaintiff's counsel, seems hardly probable.  At any rate, the request included the item of damages in just this connection, and the content of the charge would

not be likely to be more confusing, if as stated by the court than if given in the words of the request.

The court charged: "A person may be competent to make a deed though she has not mental capacity sufficient for the management or transaction of business generally and not mentally capable of making and digesting all the parts of a contract."

The plaintiff complains that this charge is erroneous, and that the law as to mental capacity should have been stated as contained in his second request, to the effect that a person must have mental capacity sufficient to clearly comprehend the nature and consequence of an act of conveyance, in order to make the latter valid. Standing by itself, the charge is not objectionable, but as applied to the case presented by the claimed proofs, it forms but a small part of the careful and correct presentation of the law of mental capacity contained in the charge, which is generally in entire accord with this second request. If, standing alone, the above instruction could be held as a somewhat broad statement of the law, clearly the jury could not have been misled when, in a later part of the charge complying with another request of the plaintiff, the court charged in the very words of the request as follows: "To have the capacity to execute a valid conveyance, the grantor must not only have the ability to transact the ordinary affairs of life and to understand their nature and effect, but also to exercise his will in relation thereto without such will being unduly influenced by another."

Plaintiff's third request, a correct general statement of the law relating to proof of undue influence, was fully complied with in an equally correct and more extensive explanation in that regard, in terms generally in use in instructions on this topic.

The fourth request of the plaintiff was entirely

covered by correct instruction in the charge as given, and the specific objection urged by counsel, that it was mixed up with the question of counterclaim or offset of money expended by defendant, is disposed of at the beginning of the opinion.

The fifth request was complied with by the court, and given to the jury with very slight verbal variation, not in any way affecting its force or content; it is evident that this error has been claimed by inadvertence.

The sixth request is as follows: "If your verdict is for the plaintiff, it should be for such sum as will equal the value of the interest of Julia Norris in the estate at the date of her death, with interest thereon at the rate of six per cent, to the date of your verdict."

The request and the actual charge on the question of damages are, as we have before observed, immaterial in case of a verdict for defendant. But plaintiff's counsel urges that since the above request was not charged, the jury might have found for the defendant on the ground that, although the deed was procured by undue influence, or while there was a want of mental capacity, yet defendant had done enough for the intestate to repay her; in other words, plaintiff complains that the jury might have made a concealed offset in favor of defendant. This is too fanciful to be seriously regarded, especially in view of the portion of the charge above quoted, wherein the judge observes that defendant had introduced no evidence as to his payments and services as regards the intestate.

In addition to the requests to charge above considered, the plaintiff made ten additional requests, largely consisting of general statements of law fortified by reference to cyclopædias. Many are correct expositions of general legal doctrine, but few, if any, would have added to the completeness or correctness of the charge. We will consider briefly such as have any

plausibility in connection with instructions given or required to be given for the proper information of the jury.

The first of these relates to the consideration of the relatives of the deceased and the attitude of the deceased with reference to them. This subject is fully covered in the charge.

In the second of these the court was asked to charge: " If you find there was a relation of confidence and trust between Julia Norris, the grantor, and the defendant, it raises a presumption against the validity of the conveyance which the defendant in this case would have the burden of rebutting by showing on his part the absence of fraud or undue influence."

This appears to be an attempt to have the court apply to the relationship of plaintiff's intestate to defendant the rule applying to those who act in a fiduciary capacity. Such a relationship as obtained between the deceased and defendant and the latter's mother, all three of whom lived together for a long time, cannot raise the presumption which obtains in strictly fiduciary relations, such as attorney and client, guardian and ward, and other analagous relations. Defendant and his mother stood in as close blood relationship as any of the presumptive heirs at law of the deceased, and there exists in this case no suggestion of a preference for a stranger or remote heir. *Dale's Appeal,* 57 Conn. 127, 144, 17 Atl. 757; *Mooney* v. *Mooney,* 80 Conn. 446, 452, 68 Atl. 985; *Lockwood* v. *Lockwood,* 80 Conn. 513, 523, 69 Atl. 8; *Hills* v. *Hart,* 88 Conn. 394, 396, 91 Atl. 257. The charge of the court upon this point was correct, and is as follows: "The burden of proving undue influence is on the party who asserts it. The blood relationship between this defendant and Julia Norris is no basis for an inference that there was undue influence. . . . Even though you should find that there was a close, con-

fidential relationship existing between this defendant and Julia Norris, it is absolutely necessary that the plaintiff prove that the defendant abused this confidence, although this proof might be by inference from opportunity or coercion."

The additional requests numbered three, four, five, six, seven and eight are attempts to state as rules and presumptions of law inferences of fact favorable to the plaintiff's contentions. So far as allowable, all of them are covered in the charge as given, which reviews the facts extensively, and gives proper guidance as to their relation and bearing on the issues involved. The ninth of these requests merely repeats in another form the necessity of knowledge on the part of decedent of the effect of the deed given, a topic fully covered in the charge. The tenth additional request was in fact given and is quoted earlier in the opinion.

There was no error in the court's exclusion of the photograph of the residence of the sisters of the intestate. As showing their condition in life it might have some faint degree of relevancy, but as forming the basis of any finding, it is so remote as to be immaterial as bearing upon the intestate's capacity or whether she was subject to undue influence, and its exclusion was within the proper discretion of the trial court.

The trial court rightly admitted the oral proof of the actual consideration of the deed from decedent to defendant. The real consideration of a deed may always be shown, where its existence or amount is within the issues in any cause. The reality and extent of the consideration in this transaction had a most important bearing upon the question of the mental capacity of the deceased, and whether or not she was unduly influenced.

There is no error.

In this opinion the other judges concurred.