THE CITY NATIONAL BANK AND TRUST COMPANY OF
DANBURY, EXECUTOR (ESTATE OF HELEN D.
PECK), APPEAL FROM PROBATE

DALY, C. J., BALDWIN, KING, MELLITZ and SHEA, Js.

Argued June 5—decided July 30, 1958

*D. Joseph Lane, Jr.,* with whom was *James C.
Driscoll, Jr.,* for the appellant (plaintiff).

*John E. Dowling,* with whom, on the brief, was
*Joseph H. Donnelly,* for the appellees (unknown
heirs).

BALDWIN, J. This is an appeal from a judgment of the Superior Court dismissing an appeal from an order of the Probate Court for the district of Bethel disallowing the probate of a will.

The finding, which is not subject to material correction, may be stated in summary as follows: On May 21, 1941, the testatrix, Helen Dow Peck, executed in the office of the City National Bank and Trust Company of Danbury, hereinafter referred to as the plaintiff, a document purporting to be her will. In the first paragraph she directed the payment of her debts. In the second she bequeathed $1000 each to two women who had been household servants. In a third she devised and bequeathed to John Gale Forbes all the rest, residue and remainder of her estate. The fourth paragraph provided: "If the said John Gale Forbes be deceased, I direct that my estate be liquidated in part or whole as my executors may determine and the sum be reinvested and the income applied toward the investigation of telepathy among the insane for their understanding and cure. This sum is to be known as The John Gale Forbes Memorial Fund." In a final paragraph she appointed the plaintiff executor and authorized it to consult with the Rockefeller Foundation concerning "the appointment of a suitable institution or individual not connected with Duke University who would be sympathetic in the carrying out of this investigation."

When the testatrix executed this purported will, she was seventy-one years of age. She died in September, 1955. She was born in Kansas and attended the University of Kansas and the Boston Conservatory of Music. She married Frank Peck, an insurance broker, in the late 1890's. They had no children. Until sometime between 1920 and 1930, they lived in

Brooklyn, New York, and elsewhere on Long Island. During this time the testatrix had a nervous breakdown and was confined for several months in an institution. Also in the 1920's, the testatrix lived on the west coast for a year, apart from her husband. After her return, she lived with her husband in Scarsdale, New York, and in Bronxville, where her husband died in 1935. She then came to live in Connecticut and in 1940 built a house in Bethel. She appeared to be a woman capable of handling her business affairs, of literary knowledge and artistic tastes. After her death, the Probate Court appointed the plaintiff as temporary administrator and ordered that a thorough search be made for John Gale Forbes. This was done by a competent person, and John Gale Forbes could not be found. A search among the papers and records left by the testatrix disclosed that she also had tried unsuccessfully over a period of many years to find a person bearing this name.

In 1919, the testatrix had purchased a ouija board which she used with her husband. She told a friend sometime after 1940 that she played with this board and "John Gale Forbes resolved out of space." Through the board he became her correspondent, and she believed him to exist although she had never seen him. Among her papers were found many references to John Gale Forbes telling of her contact with him through the ouija board, of contacts with him without the use of the board, of his manifesting himself to her physically and advising her that he was "taking her through the valley of death by the hand," of his restoring her to life, helping her to breathe, watching her diet, and taking charge of her day and night. She discussed John Gale Forbes and her will with a friend, Mrs. Jean

Rose, and a nephew by marriage, Professor John Sanford Peck. When it was pointed out to her that she should make more generous provision for the two women who had been her servants and that the death of John Gale Forbes might complicate her will, she stated that the will was as she wanted it to be. She wrote poems and stories, her writings being described as fictional and pure fantasy. She was interested in mental telepathy, but although research had been carried on in this field at Duke University, she would have none of her estate go to it. Her estate, which she had inherited from her husband, was in excess of $152,000.

The trial court concluded that John Gale Forbes was an imaginary person who had never existed, that he was the product of a mental delusion, a monomania, which obsessed the testatrix prior to and in 1941 when she executed her will and thereafter, and that this delusion was operative at the time the will was executed and controlled its testamentary dispositions.

The burden of proof in the instant case to establish the capacity of the testatrix to make a will rested upon the plaintiff. 2 Locke & Kohn, Conn. Probate Practice, § 307. What constitutes testamentary capacity is a question of law. *Turner's Appeal,* 72 Conn. 305, 316, 44 A. 310; *Kimberly's Appeal,* 68 Conn. 428, 435, 36 A. 847. To make a valid will, the testatrix must have had mind and memory sound enough to know and understand the business upon which she was engaged, that of the execution of a will, at the very time she executed it. *Atchison* v. *Lewis,* 131 Conn. 218, 219, 38 A.2d 673, and cases cited therein. Whether she measured up to this test is a question of fact for the trier. *Dunham's Appeal,* 27 Conn. 192, 202; see *Nichols* v. *Wentz,*

78 Conn. 429, 62 A. 610. The trial court found that she was suffering from a mental delusion, to wit, that there was such a person as John Gale Forbes who resolved out of space through a ouija board, that he became her correspondent, and that he existed though she had never seen him. We have defined a delusion of a testator as "a false belief for which there is no reasonable foundation, and which would be incredible under the given circumstances to the same person if of sound mind, and concerning which the mind of the decedent was not open to permanent correction through evidence or argument." *Kimberly's Appeal,* supra, 437; *Haines* v. *Hayden,* 95 Mich. 332, 354, 54 N.W. 911. The existence of an insane delusion presents an issue of fact. *Dunham's Appeal,* supra; note, 175 A.L.R. 882, 956. A person may harbor insane delusions and yet have testamentary capacity. *Boschen* v. *Second National Bank,* 130 Conn. 501, 506, 35 A.2d 849. A delusion can affect testamentary capacity only when it enters into and controls to some degree the making of a will. Ibid.; *Matter of Heaton,* 224 N.Y. 22, 29, 120 N.E. 83.

Whether, in the instant case, the delusion which the testatrix harbored entered into and controlled the making of her entire will was a question which the trial court had to decide. We cannot say as a matter of law, upon the facts found, that the court was in error in concluding that it did and therefore that the entire will was vitiated. In this situation, we do not consider the plaintiff's claim that the testatrix' delusion nullified only the dispositions in her will relating to John Gale Forbes and not the other dispositions made in it. See *Hall* v. *Mercantile Trust Co.,* 332 Mo. 802, 817, 59 S.W.2d 664; 1 Page, Wills (Lifetime Ed.) § 159;

57 Am. Jur. 96, § 87; note, 69 A.L.R. 1129, 1134.
There is no error.
In this opinion the other judges concurred.