[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT #108
 I. FACTS
This action was brought by the plaintiff, James H. Whittemore, to invalidate an amendment to an inter vivos trust on the ground that, at the time of execution, his father, the settlor, was mentally and physically incapable of performing or managing his own affairs and/or subject to the undue influence of the defendant, Carol A. Neff, the plaintiff's sister. The complaint also seeks an accounting of the trust.
On February 13, 1997, Elliot S. Whittemore. Sr., executed a trust agreement transferring the bulk of his property to two of the defendants, Carol A. Neff, his daughter, and David B. Boyd, his attorney, in trust, for the benefit of his wife, Doris Whittemore, and their six children, Carol Neff, Elliott, Jr., David, James, Norman and Dexter Whittemore. Elliot, Jr. and David are also named defendants to this action. Pursuant to the trust agreement, the bulk of the trust property was to be divided equally between Doris Whittemore and the six children.
On May 18, 1998, Doris Whittemore died. For reasons unknown, Carol Neff and Elliot, Jr. were the only two children to attend their mother's funeral, which was held on May 21, 1998, three days after her death. Seven days after his wife's funeral, on May 28, 1998, Elliot Whittemore, Sr., a resident of the Center for Optimum Care convalescent home, executed an amendment to the trust agreement, deleting three of his children, Dexter, Norman and James, from the beneficial provisions of the trust. The new beneficial provisions provided that Carol and David would each get 40% of the trust assets and Elliot, Jr. would get the remaining 20%. Four days later, on June 1, 1998, Elliot Whittemore, Sr. died at the age of 92 years. CT Page 7422
The plaintiff alleges that on and before May 28, 1998, his father suffered from various illnesses, diseases and conditions, and was under the influence of pain and other medications that rendered him mentally and physically incapable of performing or managing his own affairs. The plaintiff also alleges that while his father was physically weak and mentally incapable, he was under the control and undue influence of Carol Neff, and that she caused their father to amend the trust document giving her, Elliot, Jr. and David the remaining principal of the trust when his actual intention was to divide it equally among all six children. On December 22, 2000, the defendants filed a motion for summary judgment on the complaint along with a memorandum of law and the affidavit of David Boyd, attesting that the issues in this case are the same as those adjudicated by Judge Sferrazza in an earlier case involving the will of Elliot Whittemore, Sr.[1] The plaintiff has submitted a memorandum in opposition to the motion for summary judgment.
 II. DISCUSSION
The defendants move for summary judgment on the ground that they are entitled to judgment as a matter of law, arguing that the issues of competency and undue influence were tried and decided in the probate appeal concerning the admissibility of Elliot Whittemore, Sr.'s will. SeeNeff v. Whittemore, Superior Court, judicial district of Windham at Putnam, Docket No. 061006 (August 2, 2000, Sferrazza, J.). Accordingly, the defendants argue, the plaintiff's claims are barred by the doctrine of res judicata and/or collateral estoppel.[2]
The plaintiff argues that the Probate Court did not have jurisdiction over the trust, and therefore, res judicata is not applicable. The plaintiff also argues that the issues decided in the probate appeal were in relation to the will and have absolutely no bearing on the trust agreement. In addition, the plaintiff argues that the issue of whether Elliot Whittemore, Sr. was unduly influenced in amending the trust agreement, a document separate from the will, was not, and could not be, considered by the Probate Court or Judge Sferrazza on appeal of the Probate Court's decision. Further, at oral argument, the plaintiff argued that, even if the court, Sferrazza, J., determined that Elliot Whittemore, Sr. was competent to make the will, competency to make a will may not be the same as competency to make a trust. Accordingly, the plaintiff argues, the defendants' motion for summary judgment must be denied.
 A.
CT Page 7423 Res Judicata and Collateral Estoppel
"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) Dowling, Sr. v. Finley Associates,Inc., 248 Conn. 364, 373, 727 A.2d 1245 (1999). "Both doctrines protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation . . . and express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." (Citations omitted; internal quotation marks omitted.) Id.
 1. Res Judicata
"Res judicata, or claim preclusion, is . . . distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim." Dowling, Sr. v. Finley Associates,Inc., supra, 248 Conn. 373-74. To properly establish a res judicata defense and obtain summary judgment, the plaintiff must establish that there are no genuine issues of material fact in relation to each of the following elements: (1) the identity of the parties is the same as in the prior action (or privity is sufficiently established); (2) the same claim, demand or cause of action is at issue; (3) the judgment in the prior action was rendered on the merits by a court of competent jurisdiction; and (4) the parties had the opportunity to fully and fairly litigate the matter. See Tirozzi v. Shelby Ins. Co., 50 Conn. App. 680,686-87, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998); see also Palmieri v. Lee, Superior Court, judicial district of New Haven at New Haven, Docket No. 405641 (November 24, 1999, Levin, J.).
"The limitations on the implied powers of probate courts are well established." In re Michaela Lee R., 253 Conn. 570, 589, 756 A.2d 214
(2000). The Probate Court, as well as the Superior Court in a probate appeal, acts as a court of limited jurisdiction; see General Statutes § 45a-98; Dept. of Social Services v. Saunders, 247 Conn. 686, 708,724 A.2d 1093 (1999); Prince v. Sheffield, 158 Conn. 286, 293-94,259 A.2d 621 (1969); and has power to construe or to invalidate an inter vivos trust only when the trust is before the court for an accounting CT Page 7424 pursuant to General Statutes § 45a-175. See General Statutes §§45a-98, 45a-175; Ramsdell v. Union Trust Co., 202 Conn. 57, 73,519 A.2d 1185 (1987) (probate court "clearly lacked authority to render a binding interpretation of the inter vivos trust"). No such accounting was requested by the beneficiaries in the earlier case.
In the probate appeal, Neff v. Whittemore, supra, Superior Court, Docket No. 061006, the court was presented with two claims: (1) a claim that the Probate Court incorrectly found that Elliot Whittemore, Sr., the testator, did not possess the mental capacity to make a will on May 28, 1998; and (2) a claim that the Probate Court incorrectly found that Carol Neff exercised undue influence over the testator in his decision to make the new will. After a de novo review, the court found for the appellant on both of these claims, and reversed the Probate Court.
The claim in the present case is that Elliot Whittemore, Sr., the settlor, lacked the requisite capacity to amend the trust agreement on and before May 28, 1998, and that, the settlor's daughter, Carol Neff exercised undue influence over him in his decision to amend the trust the agreement. Because the trust and the will are not the same instrument, and the Probate Court had no authority to construe the validity of the trust in the earlier case; see General Statutes §§ 45a-98, 45a-175;Ramsdell v. Union Trust Co., supra 202 Conn. 73; the conclusion that the will is a valid instrument does not compel the validity of the trust as well.
Accordingly, this action does not involve the same claim, demand or cause of action as was involved in the probate appeal, nor did the parties have an opportunity to fully and fairly litigate these claims. SeeTirozzi v. Shelby Ins. Co., supra, 50 Conn. App. 686-87.
 2. Collateral Estoppel
"In contrast [to res judicata], collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim." (Citations omitted; internal quotation marks omitted.) Dowling, Sr. v. Finley Associates, Inc., supra,248 Conn. 373-74. "An issue is `actually litigated' if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may CT Page 7425 relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 374. "To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the parties or their privies, and that the determination was essential to the decision in the prior case." (Internal quotation marks omitted.) Id.
 B. The Probate Appeal and the Trust Amendment
In Neff v. Whittemore, supra, Superior Court, Docket No. 061006, the court reversed the holding of the Probate Court disallowing the admission of Elliot Whittemore, Sr.'s will to probate on the grounds of lack of testamentary capacity and undue influence. After conducting a trial de novo, exercising the limited statutory jurisdiction of a Probate Court; see Dept. of Social Services v. Saunders, supra, 247 Conn. 708; Princev. Sheffield, supra, 158 Conn. 293-94; the Superior Court held that the appellant, Carol Neff, had satisfied her burden of proof that Elliot Whittemore, Sr. possessed the requisite capacity to make a new will, and that the appellees, James, Dexter and Norman Whittemore, failed to prove that Carol exercised undue influence over their father in his decision to make a new will. Accordingly, Elliot Whittemore, Sr.'s will was admitted to probate. That decision was not appealed.
 1. Capacity to Create a Will
"What constitutes testamentary capacity is a question of law. . . . To make a valid will, the testat[or] must have had mind and memory sound enough to know and understand the business upon which [he] was engaged, that of the execution of a will, at the very time [he] executed it. . . . Whether [he] measured up to this test is a question of fact for the trier." (Citations omitted.) City National Bank Trust Co.'s Appeal,145 Conn. 518, 521, 144 A.2d 338 (1958); see also Stanton v. Grigley,177 Conn. 558, 564, 418 A.2d 923 (1979).
"[If] witnesses testify that [the testator] was abnormal or in their opinion of unsound mind, such testimony [should get] probative strength for the most part from the subordinate facts detailed by them from which their opinion or conclusion has been drawn. An eminent English judge said, in Cartwright v. Cartwright, 1 Phillim. 90, 102, a will case, that `the court does not depend upon the opinions of witnesses, but on the CT Page 7426 facts to which they depose.'" Maroncelli v. Starkweather, 104 Conn. 419,424-25, 133 A. 209 (1926). "[T]he absence of substantially any details of behavior or conduct of the testat[or] which tends reasonably or logically to support a conclusion of abnormality or unsoundness of mind [would rob any given] testimony of persuasive force." Id. Testimony of "[m]ere physical weakness or disease, old age, eccentricities, blunted perceptions, weakening judgment, failing memory or mind, [is] not necessarily inconsistent with testamentary capacity." (Internal quotation marks omitted.) Id, 424-25.
Capacity may exist in someone who does not know precisely what property he or she owns or whether one or more relatives have died and left surviving issue. Havens v. Mason, 78 Conn. 410, 413, 62 A. 615 (1905). All the testator needs is an understanding of the nature of his or her act, i.e. making a will, and of the natural objects of his or her bounty. See Falk v. Schuster, 171 Conn. 5, 9, 368 A.2d 40 (1976).
 2. Capacity to Create a Trust Agreement
The Restatement of Trusts states that: "A person has capacity to create a trust by transferring property inter vivos in trust to the extent that he has capacity to transfer the property inter vivos free of trust." 1 Restatement (Second) Trusts, Capacity of Settlor, Transfer Inter Vivos in Trust § 19, p. 64 (1959). Comment (a) to § 19 explains that: "If, but only if, the owner of property has capacity to transfer property inter vivos to another person to be held by him for his own benefit, he has capacity to transfer it inter vivos to be held by the transferee in trust. The rules as to capacity to transfer inter vivos are not peculiar to the law of Trusts. . . ." Id.; see also 1 W. Fratcher, Scott on Trusts (4th Ed. 1989) § 19, p. 244.
"Mental incompetency, which will defeat [a] trust, exists where a person is incapable of understanding and acting with discretion in ordinary affairs of life, or is incapable of understanding, in a reasonable manner, the nature and effect of the trust. Strictly speaking, the question presented in such a case is not necessarily whether the settlor [is] generally of sound mind, but whether he [has] sufficient mental capacity to understand the trust which he executed." 89 C.J.S. 865, Trusts § 73 (1955).
"In considering the matter of mental incompetency, it must be acknowledged that `[m]ental impairments admit of a wide variety of conditions of varying degrees of severity, depending upon the particular case." 53 Am.Jur.2d 460, Mentally Impaired Persons § 1 (1996). Our CT Page 7427 Supreme Court, in construing a complaint in an action challenging the validity of the grantor to convey certain of her real estate, has had occasion to parse the allegation that the grantor was `mentally weak and incompetent.' Hayes, Conservator v. Candee, 75 Conn. 131, 136, 52 A. 826
(1902). The Hayes court [explained] that `[t]he words "mentally incompetent" have no strict technical meaning; they do not necessarily mean that the person to whom they are applied is an idiot, or non compos mentis; they merely indicate a relative, and not an absolute, lack of mental ability.' Id. Thus, `[a]n individual may be competent for one purpose but not for another.' Adoption of Kirk, 35 Mass. App. 533, 537,623 N.E.2d 492 (1993)." Twichell v. Guite, 53 Conn. App. 42, 47,728 A.2d 1121 (1999).
"Our Supreme Court has said that [t]he test of [a grantor's] mental capacity to make . . . deeds . . . [is] whether at the time of executing them he possessed understanding sufficient to comprehend the nature, extent and consequence of them. 1 Swift Dig. 173; Hale v. Hills,8 Conn. 39, 44 [1830]. Nichols v. Nichols, 79 Conn. 644, 657, 66 A. 161
(1907)." (Internal quotation marks omitted.) Id., 50. Other courts have also used this same measure to determine mental capacity to make a trust. See, e.g., Matter of Estate of Head, 615 P.2d 271, 274
(N.M.App.), cert. denied, 615 P.2d 992 (1980) (the test for mental capacity to create a trust is "whether a person is capable of understanding . . . the nature and effect of the act in which the person is engaged"); Harrison v. City National Bank, 210 F. Sup. 362, 370
(S.D.Iowa 1962) (the relevant question is "did the settlor at the time he executed the supplemental trust, understand the consequences and effects of the same upon his rights and interests").
 Capacity to Create a Will Versus Capacity to Create Trust
Connecticut adheres to the rule that "[t]o make a valid will, the testat[or] must have . . . mind and memory sound enough to know and understand the business upon which [he is] engaged. . . ." City NationalBank Trust Co.'s Appeal, supra, 145 Conn. 521. The testator need not have actual and precise knowledge of his property or relatives; Havensv. Mason, 78 Conn. 410, 413, 62 A. 615 (1905); he need only understand the general nature of his act and the natural objects of his bounty. SeeFalk v. Schuster, supra, 171 Conn. 9.
To create a valid trust, however, the settlor must be capable of reasonably understanding the nature, extent, and effect or consequence of that trust. See Harrison v. City National Bank, 210 F. Sup. 370; Matterof Estate of Head, supra, 615 P.2d 274; cf. Twichell v. Guite, supra,53 Conn. App. 47; W. Fratcher, supra, § 19, p. 244; 1 Restatement (Second) Trusts, supra, § 19, p. 64. The question is not whether the CT Page 7428 settlor is "generally of sound mind, but whether he [has] sufficient mental capacity to understand the trust which he executed." 89 C.J.S., supra, 865.
Accordingly, the court finds that the mental capacity to make a will may be different from the mental capacity to make an inter vivos trust agreement. Certainly, some inter vivos trusts are far more complicated documents than some simple wills, and these documents would require that the settlor have a higher degree of mental capacity and understanding.
In Doolittle v. Upson, 138 Conn. 642, 644-45, 88 A.2d 334 (1952), for example, the Supreme Court, in assessing the sufficiency of the trial court's instructions to the jury, observed: "The [trial] court not only very fully and carefully defined the essentials of a sound mind and testamentary capacity but went on to charge that a testatrix `may be competent to make a will though she has not mental capacity sufficient for the management or transaction of business generally, and though she is not mentally capable of making and digesting all the parts of a contract,' . . . `some mental impairment could occur and still leave the testatrix with a sound mind within the definition of testamentary capacity. . . .'" The Supreme Court did find this instruction to be sufficient. Id.
Also, in Sullivan v. Clear, 101 Conn. 603, 610, 127 A. 14 (1924), the Supreme Court spoke favorably regarding another jury instruction: "The [trial] court charged: `A person may be competent to make a deed though she has not mental capacity sufficient for the management or transaction of business generally and not mentally capable of making and digesting all the parts of a contract.'" The Supreme Court also found that the trial court correctly charged that: "`To have the capacity to execute a valid conveyance, the grantor must not only have the ability to transact the ordinary affairs of life and to understand their nature and effect, but also to exercise his will in relation thereto without such will being unduly influenced by another.'" Id.
Additionally, the Supreme Court held, in McCue v. McCue, 100 Conn. 448,457, 123 A. 914 (1924), that: "The plaintiff might have sufficient mental capacity to understand the nature and effect of a deed of real estate, and at the same time be unable to comprehend the more complicated and unusual transaction of an assignment of stock coupled with a deed of trust." In McCue, the trial court gave the jury two separate interrogatories. One interrogatory asked whether the plaintiff had the mental capacity to assign stock coupled with a deed of trust, to which the jury found insufficient mental capacity. Id. The next interrogatory asked whether the plaintiff had sufficient mental capacity to create a deed, to which the jury found sufficient capacity. Id. It appears from CT Page 7429 reading the Supreme Court decision that both documents were signed on the same day, but that a different standard of mental capacity was necessary to establish the validity of each document because one was more complicated than the other. See id., 451, 457.
By comparing the testamentary capacity for executing a will with the contractual capacity for executing an inter vivos trust, the court concludes that a higher degree of mental capacity may be required to execute an inter vivos trust than is required to execute a will. AccordHarrison v. City National Bank, supra, 210 F. Sup. 370 (a higher degree of mental capacity is required to execute an inter vivos trust or to transact business generally); Hilbert v. Benson, 917 P.2d 1152, 1156
(Wyo. 1996) (same); see also Doolittle v. Upson, supra, 138 Conn. 644-45;Sullivan v. Clear, supra, 101 Conn. 610; McCue v. McCue, supra,100 Conn. 457.
 4. The Application of Collateral Estoppel
In the probate appeal, the court determined two issues: (1) that Elliot Whittemore, Sr. possessed the requisite capacity to make a new will; and (2) that there was insufficient proof that Carol Neff exercised undue influence over her father in his decision to make that new will. Those were the matters that were properly before the court, and those were the matters that were fully and fairly litigated. As this court discussed in Part II B (3), supra, capacity to make a will may differ from capacity to create a trust. In the probate appeal, the court necessarily determined that Elliott Whittemore, Sr. had the requisite capacity to make a new will and that there was insufficient evidence that he was the subject of undue influence in the making of that will. The court did not actually litigate or necessarily determine whether Elliot Whittemore, Sr. had the requisite capacity to amend the trust agreement or whether he was unduly influenced in the creation of that trust amendment.
Although the defendants argue that these issues were decided in the probate appeal, "[i]f an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action [because] [f]indings on nonessential issues usually have the characteristics of dicta." Dowling,Sr. v. Finley Associates, Inc., supra, 248 Conn. 374.
In the probate appeal, the issues that were necessarily litigated were Elliot Whittemore, Sr.'s capacity to make a new will and the subject of undue influence in the creation of that will. Since the holding in the probate appeal was not dependant upon Elliot Whittemore, Sr.'s capacity to CT Page 7430 make or amend a trust or whether he was subjected to undue influence in the creation of that trust, this court holds that the plaintiff is not collaterally estopped from litigating those issues in the present case.
Accordingly, based upon the foregoing, the defendants' motion for summary judgment is denied.
Foley, J.