MINNIE SHEA, ADMINISTRATRIX, vs. GUSTAVE F. HEMMING ET UX.

Third Judicial District, Bridgeport, October Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and KELLOGG, Js.

An averment that an automobile was "operated by the defendants and by the defendants' agent," is an allegation of operation by an agent, and though defective, the defect is cured by verdict.

One W undertook to drive defendant's car for him at his request. When the defendant's business had been accomplished, but before taking the defendant home, W asked and received permission to use the car to take his wife and children to West Haven. The neglect complained of occurred while W, accompanied by the defendant, was driving the car back from West Haven and was taking the defendant home. *Held* that the question whether W was then on the defendant's business and acting within the scope of his employment, was properly left to the jury.

The evidence reviewed and *held* sufficient to warrant a finding that W was negligent, and that the plaintiff's intestate was in the exercise of due care at the time of his injury.

The accident, which occurred about eleven o'clock in the evening, was occasioned by W driving the defendant's car into the rear of an automobile standing on its right-hand side of the highway. The defendant claimed, and offered evidence to prove, that the collision was caused by the failure of the standing automobile to display a red tail-light, as required by § 19 of Chapter 233 of the Public Acts of 1919. In charging on this branch of the case, the court said that the statutes did not require such a light to be displayed, provided there was sufficient artificial light to make the standing car "visible," instead of "clearly visible" as the statute prescribed, at a distance of one hundred feet to any one approaching it. *Held* that in view of the undisputed fact as to the visibility of the standing car, this inaccuracy was inconsequential.

Argued November 1st—decided December 23d, 1921.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to the Superior Court in New Haven County and tried to the jury before *Burpee, J.;* verdict and judgment for plaintiff for $10,000, against the defendant Gustave F. Hemming, from which he appealed. *No error.*

*Charles S. Hamilton* and *Samuel E. Hoyt,* for the appellant (defendant Gustave F. Hemming).

*Walter J. Walsh,* for the appellee (plaintiff).

BEACH, J.   On the night of October 18th, 1919, about eleven o'clock, the plaintiff's decedent, a police officer of the city of New Haven then on duty, was standing in front of a motor-car owned by one Sheehy, which was drawn up close to the curb on its right-hand side of Kimberly Avenue in New Haven.  While it was standing there with its brakes set, a motor-car belonging to the defendant Theresa S. Hemming, which was being driven from West Haven toward New Haven by one Wells, ran into the rear of the Sheehy car with such force that it was driven forward about sixty feet from its former position.  The plaintiff's decedent was knocked down and run over by the Sheehy car, and was found fatally injured under the wheels of the Hemming car.  The jury having found the verdict for the plaintiff, the defendant Gustave F. Hemming appeals from the denial of a motion in arrest of judgment, from the denial of a motion for a new trial on the ground that the verdict was against the evidence, and for alleged errors in the charge and in the admission of evidence.

The motion in arrest of judgment is for want of any allegation that the Hemming car was operated by an agent of the defendants at the time of the accident.

The allegation in the complaint is that the car was "operated by the defendants and by the defendants' agent." Evidently the allegation of operation by an agent is not wholly lacking. The most that might be said is that the fact was defectively alleged, and it is therefore too late, after the verdict, to raise an objection on that ground. 1 Swift's Dig. 776; *State* v. *Keena,* 63 Conn. 329, 332, 28 Atl. 522. Whether the total lack of any allegation that the car was operated by an agent of the defendants, would not be cured by a failure to object to the evidence of that fact, is a question which we need not decide.

The motion for a new trial on the ground that the verdict was against the evidence, involves three questions: whether there was evidence from which the jury might reasonably have found (a) that Wells was operating the car as agent or servant of the defendant Gustave Hemming; (b) that the proximate cause of the collision was the negligence of Wells in one of the respects alleged; (c) that the plaintiff's decedent was free from contributory negligence.

The evidential facts bearing on the operation of the car by Wells were not in dispute. The car belonged to the defendant Theresa S. Hemming, in whose favor a directed verdict was returned. She had loaned the car to her husband, the defendant Gustave Hemming, for the afternoon. He was not an expert driver, and at his request Wells drove the car for him. The particular business for which the defendant borrowed the car had been completed, and the occupants had alighted at a bowling alley in George Street. Wells, who lived in West Haven, asked the defendant whether he might take his wife and children home in the car, and the defendant gave him permission to do so provided he, Wells, would come back to George Street and take the defendant home. Then the defendant changed his

mind and went to West Haven with Wells. As to this change of plan Wells testified: "I suggested they might as well all come along and then I won't have to come back to George street; I can take him straight home." Wells had driven the car to West Haven and left his wife and children there; and it was on the way back, while Wells was taking the defendant home, that the accident occurred. We think the jury might reasonably have found that at the time of the accident Wells was driving the car as the agent or servant of the defendant. No contract of hiring need be proved. It is enough that at the defendant's request Wells undertook to drive the car for him. At the time of the accident the personal interest which Wells had in driving the car to West Haven had been accomplished. He was driving the defendant home, and the question whether he was then on the defendant's business and acting within the scope of his authority, was properly left to the jury. *Schrayer* v. *Bishop*, 92 Conn. 677, 104 Atl. 349; *McKiernan* v. *Lehmaier*, 85 Conn. 111, 81 Atl. 969.

As to Wells' negligence, one allegation of the complaint is that the driver of the car was operating the same at a high and dangerous rate of speed without keeping a reasonable lookout for vehicles lawfully upon the highway. On that issue Wells testified that he was driving the car in the neighborhood of twenty miles an hour, and that he did not see the Sheehy car until the crash came. He gives two reasons for not seeing it: first, that he was dazed or blinded by the headlights of two automobiles which passed him practically at the moment of the collision. On the other hand, two eye-witnesses of the accident, whose attention was drawn to the Hemming car as it passed them and to the collision itself by the sound of impact, testify that they saw no other automobile on the street;

and so the jury may reasonably have disbelieved Wells' testimony as to that fact. The second reason given for the failure to see the Sheehy car, was that its tail-light was not lit. The preponderance of the evidence seems to be that, if lit, it was not visible at any considerable distance; for the reason that the storage battery of the Sheehy car was run down, and what power remained was being drawn upon in an unsuccessful attempt to start the car. It was, however, in evidence that the street was lighted by electric arc lights, the light next in the rear of the Sheehy car being at the intersection of First Street, about one hundred and fifty feet away; and three witnesses of the accident, looking toward the rear of the Sheehy car from the opposite side of Kimberly Avenue, testified that they saw it and noticed that its tail-light was not lit, from points further distant than the corner of First Street. This was just before the collision. Furthermore, Wells testified that his headlights were lit, that they showed about fifty feet, and that he could have stopped his car in about its own length. This being the state of the testimony, it is apparent that the only defense which Wells himself made to the charge of negligence in not seeing the Sheehy car in time to avoid it, was that he was blinded by the headlights of oncoming automobiles. Whether there was any basis of fact for that claim was a question on which the evidence was conflicting, and the court properly refused to set aside the verdict as against the evidence on the issue of negligence.

The claim that there was no evidence from which the jury could reasonably find that the plaintiff's decedent was in the exercise of due care, calls for little discussion. He was acting within the scope of his duty as a police officer in coming over to the Sheehy car, and, while standing in front of it, he had a right to assume

that under the conditions of light testified to, the driver of the defendant's car would see and avoid the Sheehy car.

Special emphasis is laid on an error in the charge relating to that portion of § 19 of Chapter 233 of the Public Acts of 1919, which requires every motor-vehicle standing on a public highway between one half hour after sunset and one half hour before sunrise, to display a light in front and a red light in the rear, "provided this section shall not apply to any motor vehicle in a place and under conditions where there is sufficient artificial light to make such motor-vehicle clearly visible from a distance of not less than one hundred feet in every direction." The charge in question was as follows: "The absence of a red light on the tail end of the Sheehy automobile does not of itself prevent a recovery by the plaintiff in this action. . . . If there was plenty of light so one could readily distinguish the presence of the Sheehy automobile stationed where it was, if he was proceeding in the exercise of due care, then it would be entirely immaterial whether or not there was a red light on the car, and the duty would clearly be on the operator of an approaching car to avoid striking it. Further, if this car was stopped in a place where the surrounding electric lights would make it visible within one hundred feet to anybody approaching it, then the statute laws of this State did not require that the red light should be lighted." The error alleged is in using the term "visible" instead of the statutory term "clearly visible," in stating the statutory requirement. In that respect the statement was inaccurate, but as applied to the case at bar the charge is correct, because the distinction between being clearly visible from a distance of not less than one hundred feet, and being "visible within one hundred feet to anybody approach-

ing it," is of no importance in determining whether Wells was negligent or not. If it was visible at all for a distance of one hundred feet, or much less than that, the jury might find, on the evidence before us, that Wells was negligent in not seeing and avoiding it.

On that issue the question for the jury was whether under all the circumstances of the case Wells ought, in the exercise of reasonable care, to have seen the Sheehy car in time to avoid striking it; and in view of his own testimony that he could have stopped his car in about its own length, the distinction between being "visible" and "clearly visible" at a distance of one hundred feet, is too fine to be of any actual or legal importance. Conceivably, the failure to comply literally with the language of the statute might have some bearing on the question whether Sheehy was also negligent, but that again is of no importance in this case, for it would be no defense to this action that the injury to the plaintiff's decedent was due to the concurrent negligence of Wells and Sheehy.

None of the other assignments of error relating to the charge require separate comment. Some of them have been incidentally disposed of in discussing the denial of the motion to set aside the verdict, and the others are without merit.

The witness Platt, inspector of lamps for the city of New Haven, was permitted to testify, against the defendant's objection, to the effect that if complaints were made as to the condition of street lights they came to his office through the police station, and that no complaints of the electric lights on Kimberly Avenue, on the night of the collision, were received. The objection, that the evidence was irrelevant and immaterial, was well taken; and the testimony should have been excluded on that ground. It was too remote. But no harm was done, because the fact that the lights

were lit was testified to by several witnesses, and as to the condition of the lights, three witnesses testified that they saw the Sheehy car from points more than one hundred and fifty feet away. On the other hand, no witnesses testified that the street lights were not lit, and none testified that the Sheehy car was not visible from behind at that distance. The testimony of the Voloshins, mother and son, that the Hemming car was moving swiftly when it passed them, was admissible, though they were unable to estimate its speed in miles per hour.

There is no error.

In this opinion the other judges concurred.