MITCHELL ROBERTS ET AL. *vs.* THE NEW YORK, NEW
HAVEN AND HARTFORD RAILROAD COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

A party is entitled to have the jury instructed substantially in
accordance with such of his requests to charge, and such only,
as are correct in form and substance and directly applicable
to the evidence.

The plaintiff R, whose employer had contracted with the city of
Ansonia for the construction of a bridge over the defendant's
railroad tracks, offered evidence to prove that while he was
working upon temporary staging under the crossbeams of the
bridge, the steam intake of the engine on a passing train was
opened and a blast of steam, smoke and hot air was suddenly
thrown upward and against him, causing him to fall to the
roof of one of the cars and thence to the tracks below; whereas
the defendant claimed that his fall was the result of his stepping
upon the loose end of a plank. The jury returned a verdict for
the defendant. *Held:*

1. That the trial court's instruction to the jury that, because R's
complaint had not specified as an act of negligence the de-
fendant's failure to post a flagman to give warning of approach-
ing trains, he could not recover upon this ground, was erroneous,
since the evidence upon that subject, to the admission of which

the defendant made no objection, was supported by the general allegation of an omission "to take such reasonable and necessary precautions as would have prevented the occurrence complained of."

2. That the trial court's further instruction that negligence on the part of the defendant would afford no basis for liability to the plaintiff unless it was "the sole proximate and efficient cause" of his injuries, was also erroneous, for if the jury had found concurrent negligence on the part of the defendant and the city of Ansonia—a conclusion reasonably open to them despite the fact that the city's demurrer to the complaint, in which it was originally named as a party defendant, had been sustained—the plaintiff would have been entitled to a verdict.

3. That questions put by the defendant's counsel on cross-examination of the plaintiff's doctor concerning statements made to him by the plaintiff as to the cause of his fall, were not within the scope of the direct examination, which was strictly limited to the nature and extent of the plaintiff's injuries, and they should, therefore, have been excluded; and that the prejudicial character of their admission in evidence was emphasized by the trial court's charge to the jury that the plaintiff, by offering the doctor as his witness, vouched for his credibility and was bound by his testimony, for, though his instruction was correct as a general proposition of law, it was inapplicable to that portion of the cross-examination which was not properly before the jury.

Argued January 27th—decided June 14th, 1928.

ACTION by an employee, in which his employer was permitted to intervene as a party plaintiff under the provisions of the Workmen's Compensation Act, to recover damages for personal injuries alleged to have been caused by the negligence of the defendants, brought to the Superior Court in New Haven County where the demurrer of the defendant city of Ansonia was sustained (*Jennings, J.*) and the issues as to the defendant railroad company tried to the jury before *Nickerson, J.;* judgment for that defendant, and appeal by the plaintiffs. *Error and new trial ordered.*

*Charles S. Hamilton* and *Edwin G. Hayes,* for the appellants (plaintiffs).

*Edward R. Brumley,* with whom was *John H. Gardner, Jr.,* for the appellee (defendant railroad company).

HAINES, J.   The city of Ansonia was made party defendant with the New York, New Haven and Hartford Railroad Company when the suit was brought, but its demurrer to the complaint was sustained and no further action was taken by the plaintiffs against it.   The New England Iron Works, Incorporated, the employer of the plaintiff Roberts, alleged an interest in the suit by reason of having paid compensation under the provisions of the Workmen's Compensation Act, and upon its application, was made a party plaintiff and filed its complaint upon which the defendant railroad company joined issue.

The plaintiff offered evidence to prove and claimed to have proved, that he was an ironworker and engineer of fifteen years' experience in structural iron and steel work, and on December 1st, 1924, was acting for The New England Iron Works, Incorporated, as foreman of the ironworkers in the reconstruction and repair of a bridge over the tracks of the defendant railroad company at Ansonia.   The work had been laid out, planned and directed by the engineers of the city of Ansonia after consultation with those of the defendant railroad company.   The latter had refused to permit the city to build a pier under the center of the bridge between the tracks of the company.   The plaintiff had nothing to do with the work until the iron and steel construction was required.   By an arrangement between the Iron Works company and the railroad company a flagman had for a time been provided by the latter to give warning when trains were approaching the bridge and when men were on the staging under the crossbeams of the bridge.   The space for these men was limited and there was but little clearance between

the staging and the smoke stacks of passing engines. The defendant railroad company's yardmaster at Ansonia who had charge of the matter, had been notified that a flagman would be expected for duty at the bridge on the day preceding the first of December. Between ten and eleven in the forenoon of the latter day, the plaintiff was on a run-way of planking which extended lengthwise of the bridge and was leaning over to give directions to a workman who was employed near one of the crossgirders. A strong north wind was blowing which tended to carry the sound of a northbound train away from the bridge, and while the plaintiff was so engaged, a train approached from the south, but no flagman was stationed at the crossing and no whistle or other signal was given of the coming of the train. When within fifty feet of the bridge, the engineer of the locomotive threw open the steam intake, causing, as the train passed under the bridge, a sudden and strong draft and puff of steam, smoke and hot air to be thrown up against the bridge and through the open work onto the staging and the men thereon, and this blast struck the plaintiff in the chest and forehead like a blow from a hammer. The force of the impact threw the plaintiff off the staging and onto the roof of one of the cars passing underneath, from which he bounded to the tracks below, causing him serious injuries. The blast which thus struck the plaintiff was so severe that another man weighing two hundred and twenty-five pounds who was standing just below the plaintiff on another staging and who was also struck, was violently lifted but saved himself from falling by grasping the overhead planking.

The defendant railroad company offered evidence to prove and claimed to have proved that the plaintiff was in the employ of the Iron Works company as foreman of a gang of men engaged in the repair and con-

struction of the bridge in question from July 1st, 1924, to December 1st, 1924, the day of the accident. The flooring of the bridge had been removed for two months and the space between the steel girders and beams was open save for temporary structures of planking. Plank stagings were swung under the lower side of the bridge by ropes and the northerly staging was from three to four and a half feet below the bridge planking and one foot above the smoke stack of a passing engine. At times, during the four months this bridge work had been going on, the railroad company had a flagman to warn train crews of falling materials and obstructions on its tracks at this point, for the protection of its trains, passengers and employees, but no flagman had been on duty there since November fifteenth, a period of about two weeks. The Iron Works company, which at times had its own whistle blower there, had proposed to the railroad company that the latter furnish a flagman, but this proposal was not accepted. The men working under the plaintiff had been instructed by him to warn one another of the approach of trains. On December first the physical conditions at the spot were essentially the same as they had been for two months, and nothing indicated to the railroad company the need of extra precaution on the date in question. The train in question was run on regular schedule and the plaintiff knew this and that it was due at this time, and he also knew it customarily stopped at the Ansonia station south of the bridge. The workmen on the bridge were using rivetters, electric drills, reamers, concrete mixers and hammers, and making considerable noise. There were no railings or guards on the staging and no nettings, canvas or curtains beneath them. The men walked back and forth on twelve inch planks and these planks were moved from time to time. The plaintiff had directed some of the men to

tie the planks, but at the time of the accident, some were tied and some were not. As the train passed under the bridge, the plaintiff stepped on the loose end of a board and was thrown downward, together with one of the planks alongside him, onto one of the passings cars and thence to the ground. The exhaust from the engine did not cause the plaintiff to fall and he felt only a little smoke in his face when the train passed beneath the bridge at twelve to fifteen miles per hour. The plans for the bridge work had been sent to the railroad company by an employee of the city of Ansonia, but the railroad company had nothing to do with their preparation or execution and was not a party to the contract between the city and the Iron Works company. The work on which the plaintiff was engaged at the time of the accident, was entirely within his control, management and supervision, and the railroad company had no control over it. The plaintiff had more knowledge than the railroad company of his position and the attendant dangers. One of the steelworkers, fifty to seventy feet from the plaintiff, saw the train enter and leave the station, and also saw it when it was within fifty feet of the bridge. He also saw the plaintiff was over the tracks on which the train was running, but though he had been told by the plaintiff to call out when he thought there was danger, he did not call. The puffing of the engine when fifty feet from the bridge was no different than when passing under it. The jury returned a verdict for the defendant and judgment was entered accordingly and the plaintiff Roberts appealed.

The assignments of error relate to certain portions of the charge as given by the trial court, to refusals to charge as requested and to certain rulings on evidence.

Many of the requests to charge are objectionable

both in form and substance; some are argumentative, and others are framed with the apparent purpose of obtaining a detailed statement of the claimed facts in a light favorable to the plaintiff, while others are in part incorrect. However, the sixth and seventh requests are substantially accurate statements of law, and they have the merit of direct application to the evidence in this case. Though the subjects are in part touched upon by the general language of other portions of the charge, the plaintiff was entitled to the substance of these particular requests and their refusal was error.

Error is assigned because of the following statement to the jury: "The presence or absence of a flagman has been discussed before you. I find no reference made to it in the complaint. I have already said to you that the plaintiff cannot claim a recovery for any negligent act not alleged. The evidence discloses that at times a flagman was provided by the defendant to warn the operatives of its trains of falling material or obstructions on its tracks; that was for the purpose of protecting its trains and the passengers and employees it carried." An examination of the complaint shows that strictly, the court was correct in saying that the failure to provide a flagman was not one of the plaintiff's specifications of negligence. The New England Iron Works, Incorporated, had alleged it in its complaint, but this could not be taken advantage of by the plaintiff Roberts who did not join in that complaint. Moreover, the appeal itself appears by the record before us to have been taken by the plaintiff Roberts only, and the finding and the appellee's brief so treat it. The plaintiff Roberts did allege in his original complaint, as one of the specifications of negligence, the failure of the defendant to give the plaintiff warning of the approach of the locomotive "by horn,

whistle, siren or otherwise," but he afterward filed another complaint which he denominated an "amended complaint," though it is in all respects a substituted complaint, complete in itself. The trial was apparently upon this complaint, which contained the allegation that the defendant was negligent "in failing to take such reasonable and necessary precautions as would have prevented the occurrence complained of." This was denied without any request for more specific statement. Apparently without objection, evidence regarding a flagman was admitted at the trial, obviously in support of this general allegation. Under these circumstances, the direction to the jury that no recovery could be had upon this ground, was erroneous.

Error is also assigned in the statement to the jury that the railroad company could not be held liable to the plaintiff unless it was guilty of a negligence which was "the sole proximate and efficient cause" of the plaintiff's injury. The defendant company justifies this charge by the claim that the doctrine of joint tortfeasors was not involved because that company was, at the time of trial, the sole defendant, the codefendant city of Ansonia being out of the case by reason of the demurrer referred to, and further, that the plaintiff did not claim that there was negligence on the part of anyone else. Neither of these reasons proves the point. It was not necessary that a joint tort-feasor be made defendant, and it was not necessary that the plaintiff make the claim in this case that another party was also liable to him for the injury as a joint tort-feasor. In the original complaint the plaintiff sought to hold the city of Ansonia as joint tort-feasor. The demurrer sustained determined only that the allegations of the complaint were insufficient; it did not determine whether there was negligence on the part of the city. The finding discloses that the work which

the plaintiff was doing, was all planned and directed by the city of Ansonia long before the plaintiff had anything to do with it. If the jury had concluded, as they conceivably might have done, that the injury to the plaintiff was caused in part by the negligence of the city or its representatives, this charge would have required them to give their verdict to the defendant, whatever the negligence of the latter. It should have been made plain to the jury that the liability of the defendant was not removed by the fact that the negligence of some third party concurred with that of the railroad company in producing the injury, and the charge as given was erroneous. *Ashborn* v. *Waterbury,* 70 Conn. 551, 40 Atl. 458; *Shea* v. *Hemming,* 97 Conn. 149, 155, 115 Atl. 686; Cooley on Torts (2d Ed.) pp. 823, 824.

In the *Shea* case, the plaintiff claimed to have proved that the defendant's agent, Wells, drove his car into the rear end of a standing car of one Sheehy, who was not a party to the action, causing it to project forward against the plaintiff's decedent. The defense was, in part, that the rear red light of the Sheehy car was not lit as required by the statute. As to that we said (p. 155): "Conceivably, the failure to comply literally with the language of the statute might have some bearing on the question whether Sheehy was also negligent, but that [question] is of no importance in this case, for it would be no defense to this action that the injury to the plaintiff's decedent was due to the concurrent negligence of Wells and Sheehy."

Error is assigned in the admission of the testimony of one Doctor Henze. He was called by the plaintiff to testify as to the character and extent of the plaintiff's injuries. After so testifying, he was asked upon cross-examination, what the plaintiff said to him as to the cause of his fall and injury. This was objected

to as not proper cross-examination, but the objection was overruled and the evidence admitted. The defendant could have called the doctor and made him its own witness for the purpose of showing inconsistent statements by the plaintiff, but the long-established and generally accepted rule is that the witness may not, on cross-examination, be interrogated as to facts and circumstances not relating directly to the subject-matter of the direct examination. 1 Greenleaf on Evidence (16th Ed.) p. 571. As the matter was presented, the objection that it was not legitimate cross-examination was valid and should have been sustained.

The prejudicial result of this ruling is shown by the following portion of the charge which is likewise assigned as error. The court said to the jury: "The plaintiff introduced as a witness Doctor Henze. By calling Doctor Henze to the stand as his own witness, the plaintiff in a general sense, vouched for his good character. Where his statements were fairly made and the facts to which he testifies are not otherwise controverted or contradicted, they must be considered as binding upon the plaintiff. Doctor Henze testified that soon after the accident . . . being asked as to what the plaintiff said to him, his answer was: 'He told me that he accidentally stepped on the loose end of a board and was precipitated downward, falling upon a train, a moving car, and rolled from the car to the ground.' In that testimony Doctor Henze is corroborated by Doctor Haberlin, I think is the name; you will recall the other physician called by the defendant, who wrote down the substance of what was said by the plaintiff. You will consider their testimony in connection with determining how the plaintiff was injured." The finding shows that after the jury had retired, this portion of the charge was called to the attention of the court by the counsel for the plaintiff who

claimed it was erroneous. After a long discussion by the court and counsel on both sides, the charge as given was allowed to stand.

The general rule as to the binding character of the statements of one's own witness, is correctly stated in the first part of the foregoing charge. *Walsh* v. *Studwell*, 105 Conn. 453, 455, 135 Atl. 554; *McCue* v. *McCue*, 100 Conn. 448, 453, 123 Atl. 914. But the rule has no application in the present instance because the statements were not properly before the jury; and that reason alone also denies them any value as evidence of how the plaintiff was injured.

It is unnecessary to discuss other reasons of appeal. There is error and a new trial is ordered.

In this opinion the other judges concurred.