## ANNA GANZKE
*vs.*
## SAMUEL J. LUCIA ET AL.

Court of Common Pleas   New Haven County   File No. 32286

MEMORANDUM FILED JANUARY 12, 1942.

*John H. Sheehan,* of New Haven, for the Plaintiff.

*Francis J. Moran,* of New Haven, and *John E. McNerney,* of Hamden, for the Defendants.

FITZGERALD, J.   The agency of the operators of plaintiff's and defendant's respective cars is admitted.

The physical facts, in the main, appertaining to the collision between plaintiff's car and defendant Evelyn Lucia's car on the early afternoon of August 30, 1941 (the Saturday preceding Labor Day) are not controverted.

The Milford Turnpike is a main highway extending between

Allingtown, a division of the Town of West Haven (adjoining City of New Haven) and the Town of Milford, a short portion of which runs through the Town of Orange. Said highway is subject to considerable vehicular traffic and runs substantially in an easterly and westerly direction, West Haven being the eastern terminus and Milford the western. At a point on the southerly side of said highway in the Town of Orange another highway called Bull Run Road intersects the same. The mouth or northern terminus of the latter highway, curving in nature, is about 150 feet in width.

Said turnpike in the general vicinity of Bull Run Road is composed of four concrete lanes, each nine feet wide, the two southerly lanes being intended for eastbound (West Haven, New Haven, etc.) vehicular traffic and the two northerly lanes being intended for westbound (Milford, Bridgeport, etc.) vehicular traffic. The division line between said eastbound and westbound traffic lanes was, on August 30, 1941, painted white for several inches to the north and south of the line itself for the apparent purpose of denoting the center of said highway. This white demarcation was plainly visible on said day west of the point on said highway where defendant's car and that owned and operated by one Chambers came in contact.

There is no question but that on the early afternoon of said August 30th (a clear and hot day) plaintiff's car was being operated by her husband in a westerly direction towards Milford in the extreme northerly lane of said turnpike in the vicinity of the intersection of said Bull Run Road. Said car, when somewhat east of said Bull Run Road intersection on the southerly side of said turnpike, was 100 to 125 feet to the rear of the Chambers car likewise proceeding west. The car of the defendant Evelyn Lucia, operated by her husband (also a named defendant), was proceeding easterly on said turnpike in the eastbound traffic lane next to the center of said highway. There were three occupants in the Lucia car, including the operator, all seated in the front seat.

In the general vicinity of said intersection, at said time, vehicular traffic proceeding west (as were cars of plaintiff and Chambers) on said turnpike was comparatively light, but the eastbound lanes were filled and formed two moving columns of vehicles proceeding east.

A collision took place between defendant's car and that of

Chambers. The point of impact on Chambers' car was the front left side thereof. After coming in contact with the Chambers car it would appear that defendant's car careened off in a somewhat northeasterly direction on said turnpike definitely to the north of the center of said highway and with considerable force struck the full left side of plaintiff's car and still continued on some 180 feet in a semi-arc, coming to rest in a ditch off the northerly side of said highway.

The following points are expressly noted: (a) the Chambers car, after the impact, was at a right angle to the center line of said turnpike, facing south; (b) plaintiff's car, after the impact, was turned about so that it was facing the direction from which it had come—east; and (c) defendant's car traveled about 50 feet after it came in collision with the Chambers car and before striking plaintiff's car, and continued on about 180 feet after striking plaintiff's car and finally came to rest in the aforesaid ditch, constituting approximately a total distance of 230 feet of rampage and including a touching acquaintance with a pole before cessation of destructive movement.

As noted in the second paragraph of this memorandum, the physical facts are not in dispute. This does not mean, however, that the defendant concedes liability or that the plaintiff admits defeat. It was defendant's claim at the trial that Chambers was the cause of the debacle—that the Chambers car had crossed over to the south of the center of the highway, struck defendant's car, causing the operator to lose control and, among other things, inadvertently step on the gas in a moment of confusion, resulting in said car moving forward rapidly and striking plaintiff's car, etc. The position taken by the court is that for the purposes of this case it is not necessary to determine whether or not Chambers may have been a contributing factor in the manner in which he operated his car. It appears to the court that the physical facts compel the conclusion that the defendant Samuel J. Lucia was negligent in the operation of his wife's car. His evident loss of control, apparent speed and distance traveled between objects was obviously due to something more than momentary confusion.

On the liability aspect the court concludes:

1. Plaintiff has established by a fair preponderance of the evidence that the defendant Samuel J. Lucia was operating his

wife's car in a negligent manner substantially as alleged in the complaint.

2. Such negligence was a proximate and responsible cause of the damages to plaintiff's car.

3. Plaintiff's operator was not guilty of contributory negligence.

4. Chambers' negligence, *if negligent he was,* does not under all the circumstances of the case bar plaintiff from recovering judgment of defendants.

In connection with conclusion No. 4 reference is made to *Tower vs. Camp,* 103 Conn. 41 and *Roberts vs. New York, N. H. & H. R. Co.,* 107 id. 681. In the *Tower* case it is said (pp. 46-47): "Each plaintiff is suing these defendants, as each had the right to do, although the negligence of a third party might have contributed to the injury. Each tort-feasor can be sued separately; *Shea vs. Hemming,* 97 Conn. 149, 155 . . . . *Sullivan vs. Krivitsky,* 100 Conn. 508 . . . . and since the action may be so brought, no allegations are required in the complaint except such as shall properly set forth the liability of the defendant sued." In the *Roberts* case it is said (p. 689): "It should have been made plain to the jury that the liability of the defendant was not removed by the fact that the negligence of some third party [may have] concurred with that of the railroad company in producing the injury, and the charge as given was erroneous. *Ashborn vs. Waterbury,* 70 Conn. 551 . . . . *Shea vs. Hemming,* 97 Conn. 149, 155 . . . . Cooley on Torts (2d ed.) pp. 823, 824." *See, also, Iannucci vs. Lamb,* 123 Conn. 142, 145.

The court now comes to the question of damages. Plaintiff's car was a 1937 Cadillac sedan damaged beyond the point of reasonable repair. Plaintiff's expert testified that the market value of such cars, generally speaking, in August, 1941, was $695, but that this particular car had an added market value of $100 because of extensive repairs, improvements, etc., made by plaintiff in July, 1941. On cross-examination the witness readily admitted that notwithstanding the splendid condition of said car prior to the accident, there would have been some difficulty in securing $795 in the second hand market for the same. It is elementary that the term " 'market value' presupposes a market with willing sellers *and able and willing buyers.*" (Italics added.) *Ford vs. Dubiskie & Co., Inc.,* 105 Conn. 572, 581.

The court, therefore, sets the market value of plaintiff's car, before the accident, at $745. This figure allows $695 as a working basis and only an additional $50 in lieu of $100 because of the exceptionally good condition of said car.

Said witness testified that the salvage is only $50. The court expressly finds that an additional item of $40 should be added thereto, representing the purchase price of a brand new and unused tire purchased by plaintiff in July, 1941, and not damaged in said accident. It is to be noted that rubber tires following the episode in current history referred to as "Pearl Harbor" are at a premium. Whether or not said tire has today a greater value is a matter upon which the court was not advised.

In view of all the foregoing, therefore, judgment will enter for the plaintiff to recover of the defendants damages in the amount of $655 ($695 and $50 equals $745; $50 and $40 equals $90; $745 less $90 equals $655).